JAMES GAHAGAN pl'ff in error *vs.* THE PEOPLE def'ts in error.

On the trial of an indictment for bigamy, the confessions of the defendant, though supported by proof of cohabitation and reputation, are not sufficient to establish the first marriage: proof of actual marriage, either by the record or by the evidence of an eye witness, is requisite.

This cause· came up on writ of error to the court of sessions of the county of Albany.   The defendant was indicted in that court for bigamy, as follows:

The jurors, &c., &c., do present:

That James Gahagan, late of the town of Watervliet, in the county of Albany, aforesaid, on the first day of January, in the year of our Lord one thousand eight hundred and fifty-two, at the parish of Dumklief, in the town of Kearney and county of Sligo, in Ireland, in the kingdom of Great Britain, did marry one Bridget McCarty, and her the said Bridget McCarty did

Gahagan *v*. The People.

then and there have for his wife, and that the said James Ga-
hagan afterwards, viz., on the first day of July, in the year of
our Lord one thousand eight hundred and fifty-two, with force
and arms, at the town of Watervliet, in the county of Albany,
feloniously did marry and take as his wife, one Rebecca S.
Noice, and to the said Rebecca Noice, was then and there
married, (the said Bridget McCarty being then and there living
and in full life,) against the form of the statute in such case
made and provided, and against the peace of the people of the
state of New York and their dignity.

The defendant having pleaded not guilty, the issue came on
for trial before said court, on the fourteenth day of December,
1852.

To maintain the issue on the part of the people, Catharine
McCarty was called as a witness and testified: That she was at
home at the parish of Dumklief, town of Kearney, in the county
of Sligo, Ireland, when the prisoner and the sister of the wit-
ness, Bridget McCarty, came in on one Friday night, at the
house of witness's mother, and said they were going to get
married, and went to get married. That, when they came back,
they said they had been married by a priest, whose name they
mentioned, but that she had forgotten what the name was.
That the prisoner and said Bridget lived together after that as
man and wife. That they had one child in Ireland and five in
this country; that the name of the child born in Ireland is Ellen
and that she is now in this country. That the prisoner and said
Bridget have lived together in Whitehall in this state, and that
said Bridget was then in the almshouse in Washington county.

On cross-examination, the witness said she was nineteen
years of age; had been six or seven years in this country; had
heard that her sister Bridget was still living, but had not seen
her in three or four years; that she knew she was living, and
had heard from her two months previously by way of a man
coming from Whitehall; that she sent for some money by him.

The counsel for the prisoner, in due time, objected to the
admission of each and every part, separately, of the evidence
of Catharine McCarty, on the grounds:

1. That, in order to prove the first marriage in a case of bigamy, it was necessary to produce the marriage record, or a certified copy thereof, or some one present at the marriage ceremony.

2. That the declarations and admissions of the prisoner of the first marriage and evidence of cohabitation with the first wife are incompetent and inadmissible to prove the first marriage.

3. That the declarations and admissions of prisoner do not dispense with the production of the record.

Which objections were overruled by the court, and the evidence allowed, and defendant's counsel duly excepted.

*Thomas B. Richards*, being called on the part of the people, and duly sworn, said: " I am one of the constables of West Troy; I know the prisoner; I arrested the prisoner. Prisoner told me he was married to Bridget McCarty. I know Bridget McCarty; I saw her in Washington county poorhouse, in Argyle, about three or four weeks ago. Prisoner told me he had a wife there; prisoner told me he had another wife at Whitehall, in the poorhouse. He did not tell me in what country he married her."

The evidence of Thomas B. Richards was also, in due time, objected to, in each and every particular separately, by counsel for prisoner, on the grounds:

That the admission and confession of prisoner were incompetent and inadmissible to prove the first marriage.

The objection was overruled by the court, and the evidence received, and defendant's counsel duly excepted.

*John W. Burns*, being called on the part of the people, and being duly sworn, said: " I am a justice of the peace, living at West Troy; I married the prisoner to one Rebecca Sophia Noice, in December last, in William Van Olinda's office; Van Olinda was present and signed certificate.

The evidence of John W. Burns, to prove second marriage, was also, in due time, objected to by counsel for prisoner, on the grounds:

1. That the prior marriage had not been sufficiently and legally proved, as charged in the indictment.

2. That the first marriage had not been proved to have been solemnized in due form of law.

The court overruled the objections aforesaid, and held that the question as to whether the first marriage had been sufficiently proved, was a question of fact for the jury.

To which rulings of the court, the counsel for the prisoner then and there duly excepted.

The counsel for the people, farther to maintain the issue on the part of the people, called, as a witness,

*Nicholas Hallenbeck*, who, being duly sworn, said: " I am the jailor of Albany county; prisoner sent this letter; it was given to me by the prisoner, requesting that I should send it to his wife."

The counsel for the prisoner objected to the introduction of this letter, as evidence, on the grounds:

That the acknowledgments and confessions or declarations of prisoner are incompetent and inadmissible.

The court overruled the objection and admitted the evidence. To which ruling of the court, prisoner's counsel duly excepted.

The district attorney then read the said letter to the court and jury, in which letter the defendant admitted he was the husband of said Bridget, to whom it was addressed, and to whom he excused his getting married the second time on the ground that he was drunk. The letter was dated twenty-seventh November, 1852, and was directed to Bridget Gahagan, care of Mr. Hopkins, Argyle, Washington county.

The cause was then rested on the part of the people, and the counsel for the prisoner moved that the court discharge the prisoner on the grounds:

1. That the evidence was not sufficient to go to the jury.

2. That there was a variance as to the time of the alleged first marriage set forth in the indictment and the proof thereof.

The court refused to discharge the prisoner, and held the evidence sufficient for the consideration of the jury.

No evidence was offered on the part of the prisoner, and the court thereupon charged the jury as follows:

That, before the jury could convict the prisoner, they must

be satisfied that the prisoner was married to Bridget McCarty in Ireland, as charged in the indictment, and that such marriage was a lawful one, according to the laws of that country; that to establish such fact, the jury might take into consideration the statements made by the prisoner on the several occasions referred to by the witnesses, together with the letter written by the prisoner after his confinement on the charge; that when the first marriage takes place in a foreign country, the defendant's confession is evidence to go to the jury to prove the same, but that the jury must be clearly satisfied that such confession proves the fact of such marriage, before they will be warranted in convicting, provided a second marriage be proved.

That the jury must also be satisfied that the second marriage has been legally proved, and that the first wife was living at its consummation. There would seem to be no question upon these points, if the people's witnesses were to be credited; however, that was a question for the jury.

The defendant's counsel requested the court to charge the jury that the evidence on the part of the people was merely presumptive of a marriage in fact, as it regarded the first marriage, and that it did not prove an actual marriage; and that in order to prove the first marriage, it was necessary to produce the record of the marriage or a certified copy thereof, or some one present at the marriage ceremony; and that the confessions or declarations of the prisoner, and cohabitation with his first wife, were merely presumptive of a marriage in fact.

The court declined so to charge, and held the evidence proper for the consideration of the jury; and prisoner's counsel excepted thereto and to each and every part of the charge as above set forth.

The jury found the prisoner guilty, and he was sentenced to imprisonment in the state prison at Auburn, for the term of four years and nine months.

*J. A. Bloomingdale,* for the prisoner, made the following points:

Gahagan *v.* The People.

I. It is necessary to prove the prior marriage in a case of bigamy by direct and positive proof. (1 *Russ on Cr.* 186 and note; 15 *Mass.* 163; 3 *Starkie Ev.* 893; 2 do. 781.)

II. The declarations or admissions of defendant of his first marriage and evidence of cohabitation with first wife, are inadmissible to prove the same. (4 *Comst.* 230, 246; 4 *Johns.* 51; 6 *Conn. R.* 446; *Swift's Ev.* 140; *Swift's Dig.* 501; 19 *Maine,* 155; 7 *Johns.* 314.)

III. It is necessary to show that the foreign marriage was solemnized in due form of law. (10 *East.* 282.) The law will not presume a valid marriage as in civil cases. (*Russ. & Ry. c. c.* 109; 1 *Phill.* 257; *Jacobs' Cases,* 1; *Moody. c. c.* 109.)

IV. That the identity of the first wife must be proved by some one present at the marriage ceremony. (9 *Mass. Rep.* 449; 8 *Greenl. R.* 75.)

V. The evidence of the first marriage is not sufficient to convict.

*T. C. Sears,* for the people, claimed that the declarations given in evidence were admissible and sufficient, and cited 1 *East. P. C.* 470; 1 *Car. & Kir.* 164; 2 *Cow. & Hill's Notes,* 1148; 1 *Ashmead,* 272; 16 *Ohio R.* 173; 3 *Rich. R.* 434; 11 *Maine,* 391; 8 *Serg. & Rawl.* 159.)

*By the Court,* PARKER, J.—The rule is not controverted as laid down in Kent (2 *Kent's Com.* 53) and in other elementary writers, that marriage may be inferred from continual cohabitation and reputation as husband and wife, except in cases of civil actions for adultery or in public prosecutions for bigamy and adultery, when actual proof of the marriage is required. But it is contended that the admissions of the defendant are of such a positive character as to be properly received to establish his marriage, even in the cases above excepted, and the decisions have been conflicting upon the questions, whether such declarations are admissible, and if so, whether they are sufficient, when deliberately made, to establish the fact of marriage.

In Maine such evidence has been received. *Cayford's case* (7 *Greenl.* 57) was an indictment for lewd and lascivious co. habitation, and confessions of having been married in England were received as sufficient proof of the fact; and in *Ham's case* (2 *Fairf.* 391) it was held, that on the trial of one indicted for bigamy, adultery, or lascivious cohabitation, the marriage, whether solemnized in that state or otherwise, might be proved by the deliberate confession of the defendant. Both these cases are cited and approved in *The State* v. *Hodgkins* (19 *Maine R.* 155.)

The same doctrine was held in Pennsylvania, in *Murtagh's case*, (1 *Ashmead*, 272,) which was an indictment for bigamy, and in *Forney* v. *Hallacher*, (8 *Serg. & Rawle*, 159,) which was an action for *crim. con.*; and in Virginia, in *Warner's case*, (2 *Virg. cases*, 95,) which was an indictment for bigamy—in South Carolina, in *Britton's case*, (4 *McCord*, 256,) and *Hilton's case*, (3 *Rich. R.* 434,) both of which were indictments for bigamy—in Ohio, in *Wolverton's case*, (16 *Ohio*, 173,) which was also an indictment for bigamy. In *Regina* v. *Simmonsto*, (1 *Carr. & Kirwan*, 167; 47 *Eng. Com. Law*,) which was also an indictment for bigamy, it was held in England that the first marriage might be proven by the admissions of the prisoner.

A different rule is well established in other states. In Massachusetts, such evidence is held to be insufficient. In the case of *The Commonwealth* v. *Simeon Littlejohn and Margery Barbarick*, (15 *Mass. R.* 163,) indicted for lewdly and lasciviously associating and cohabiting together, the latter being alleged to be the wife of Thomas Barbarick, a sister of said Thomas testified that about twelve years previous, said Thomas and Margery left the house of the witness for the declared purpose of going to the house of a clergyman, about two miles distant, in order to be by him joined in marriage; that after an absence sufficient for that purpose they returned, declaring that they were married, and that they lived together as man and wife, having several children, until a year previous to the trial. The jury found the defendant guilty, but it was resolved by the whole court that the evidence was insufficient; that it was not

the best of which the case admitted; that if those persons were married, it could be proved by the record of the clergyman, or, at any rate, by the testimony of persons actually present and the verdict was set aside. The evidence introduced to prove marriage in that case was very much like that in the case before us.

It was decided in the state of Connecticut, in *Roswell's case* (6 *Conn. R.* 446), which was an information for incest alleged to have been committed by the prisoner with his legitimate daughter, that an actual marriage between the prisoner and such daughter's mother must be proved; and that, for that purpose, neither cohabitation, reputation, nor the confessions of the prisoner were admissible. In that case, the subject was very fully and carefully examined, in the opinion of the court. See also *Swift's Ev.* 140; *Swift's Dig.* 501, for the law in that state.

In this state, as early as 4 *Johns. Rep.* 51, it was held in *Fenton* v. *Reed*, that strict proof of actual marriage was only required in cases of bigamy and in actions for criminal conversation; and that in other cases, marriage might be proved from cohabitation, reputation, acknowledgment of the parties, reception in the family, and other circumstances from which a marriage might be inferred.

In *The People* v. *Humphrey*, (7 *Johns. R.* 314), the question came directly before the supreme court in an indictment for bigamy. The prisoner had been found guilty on his voluntary acknowledgment of his former marriage. But the court held it insufficient evidence, citing *Morris* v. *Miller*, (4 *Burr.* 2056,) where Lord Mansfield held, that in prosecutions for bigamy, as well as in actions for *crim. con.*, a marriage in fact must be proved, and *Birt* v. *Barlow* (*Doug.* 171.)

The correctness of this rule is recognized in the opinions delivered in the late case of *Clayton* v. *Wardell* (4 *Comst. Rep.* 230.)

Whatever, therefore, may be the rule of evidence in other states, I think we are bound in this state by the decision in *The People* v. *Humphrey*, which is directly in point.

In one respect the decisions agree, viz., that public prosecutions for bigamy, incest and adultery, and the single civil action for *crim. con.*, all stand on the same footing, and are governed by the same rule of evidence. If admissions are adequate evidence in one, they are in all of these cases.

It has not been decided in this state, that confessions of the marriage are not admissible, but that they are insufficient to prove the fact. I do not see upon what principle they can be excluded, and though insufficient of themselves to prove marriage, even when aided by proof of cohabitation and reputation, yet they may be important evidence, and I think they are in all cases competent. They corroborate the positive evidence of an eye witness to the marriage. They strengthen the proof of the identity of the parties, or of the clergyman or officer officiating; and they add to the weight and certainty of the proof whether the marriage be proved by the record or by one present. It is the right, I think, of the party prosecuting, to avail himself of the statements voluntarily made by the defendant, as to any material fact in issue. But it is competent for the court, in its vigilant care for the rights of a party, to require the highest and most satisfactory evidence of the fact in issue, especially in a criminal prosecution. In questions of title to land the parol admission of a party is not sufficient to show he has parted with real property. The law exacts the better and higher evidence of a deed. And it is always competent, and no violation of principle, for the law to prescribe what kind of evidence shall be required to establish a fact.

I see no reason for making a distinction between cases of marriage in a foreign country and marriage in this state. A careful examination of the decisions shows that none has really been recognized. The fact is equally important to the defendant, whether alleged to have taken place here or in a foreign country, and calls for the same grade of evidence. The same kind of evidence is required to prove the signature to a note executed in Ireland as if it were executed in this state, and so of every other fact necessary to be established on a trial. The peril of the defendant should not be increased, because of the

difficulty of obtaining proof. That is a misfortune that should fall on the prosecution, if upon either party.

I think the court below erred in holding that there was sufficient proof of the first marriage to submit the question to the jury, and that, for that reason, the judgment of the sessions should be reversed and a new trial awarded.

Judgment reversed.

---

SUPREME COURT. Monroe General Term, March 1853. *Selden, Johnson* and *T. R. Strong*, Justices.