HECLA POWDER COMPANY, Appellant, v. THE SIGUA IRON COMPANY, Respondent.

1. APPEAL — OBJECTION NOT TAKEN AT TRIAL. In a civil action, no objection not taken upon the trial and saved by an exception can be considered in the Court of Appeals.

2. CLAIM ON APPEAL INCONSISTENT WITH POSITION AT TRIAL. Where, so far as appears from the record, the appellant from a judgment entered on a verdict acquiesced in the submission of all the issues to the jury, he cannot be heard in the Court of Appeals to claim that the evidence does not warrant the verdict.

3. EVIDENCE — CODE CIV. PRO. § 942 — PRINTED COPY OF FOREIGN ORDINANCE — PRESUMPTIVE EVIDENCE OF PUBLICATION BY AUTHORITY. The presence of testimony that a book before the trial court, printed in the language of a foreign country, contained the copy of an ordinance of the government of that country, in existence by the force of the law, and was the official book of ordinances in general use, warrants the Court of Appeals in sustaining its admission, under section 942 of the Code of Civil Procedure, as presumptive evidence of the ordinance, although the record does not disclose, in words, that the book had been published by the authority of the foreign government, where the objection to its admission was general and for aught that appears might have been obviated at the trial if it had been more specific, and the book itself is not before the Court of Appeals.

4. SALE — LIABILITY OF VENDOR FOR BREACH OF CONTRACT TO ENABLE VENDEE TO EFFECT LEGAL IMPORTATION. When the vendor of an article to be delivered in a foreign country, where its importation is prohibited by law except under special official permit, knowing that fact and that his failure to furnish the vendee-consignee with the necessary papers

would render the latter liable to a fine in attempting to import an interdicted article, contracts to furnish the consignee with the documents essential to a legal importation, but fails to do so, and the consignee is therefore subjected to the prescribed fine, the loss should be borne by the vendor as a natural consequence of his breach of contract.

*Hecla Powder Co.* v. *Sigua Iron Co.,* 91 Hun, 429, affirmed.

(Submitted December 16, 1898; decided January 10, 1899.)

APPEAL from a judgment of the late General Term of the Supreme Court in the first judicial department, entered upon an order made December 18, 1895, affirming a judgment in favor of the defendant rendered upon a verdict, and an order denying a motion for a new trial.

This action was brought upon a draft in the usual form for $950, dated May 10, 1892, payable two months after date, drawn by the plaintiff and accepted by the defendant.

It was pleaded as a defense that said draft was accepted upon the purchase by the defendant, from the plaintiff, of 5,000 pounds of blasting powder at the agreed price of $950, on a credit of two months, and that the plaintiff stipulated to deliver said powder to the defendant, or its agents, " laid down in " Santiago de Cuba, and to give the defendant previous notice of the vessel by which it would deliver said powder and the time of the sailing of the same. It was alleged as a breach of said agreement that the powder was never delivered, and that the notice was not given as agreed.

It was pleaded as a counterclaim that the plaintiff attempted to deliver the powder to the defendant, but neglected to procure the permits from the Spanish government, which were necessary in order to land the powder in Santiago; that it also failed to notify the defendant as provided in the contract, and that by reason of such neglect and failure the powder was declared contraband and seized by the Spanish government, which inflicted a fine upon the defendant's agents of $3,472.49, and they were obliged to pay it. Judgment was demanded against the plaintiff for that sum.

Upon the trial evidence was given tending to show that the parties knew of the difficulties and dangers attending the

shipment of high explosives to Santiago de Cuba, and that the defendant ordered the powder upon the express understanding that the plaintiff should make arrangements so that it could be safely landed at said port; that the price of said powder, which was in fact dynamite, an interdicted article in Cuba except when landed by special permission, delivered in New York, was 17 cents a pound, but when laid down in Santiago was 19 cents; that the plaintiff agreed to deliver the powder to the agents of the defendant in Santiago, to pay the freight thereon, to notify the defendant of the shipment and of the name of the vessel, and to also notify its agents of the shipment, and forward to them all the papers necessary to lawfully land the powder, so that they would have them on the arrival of the vessel.

The plaintiff obtained a permit from the Spanish consul in New York and a bill of lading from the captain of the vessel upon which the powder was shipped, but did not send them to the defendant's agents in Santiago, except as it delivered them to the captain of the vessel for his own use and for transmission to the agents of the defendant, who never received them. Upon the arrival of the vessel at Santiago, as the agents of the defendant did not have the necessary permit, the powder was seized and confiscated and a fine was imposed upon said agents by the Spanish authorities, which they were compelled to pay.

The jury rendered a verdict in favor of the defendant for the amount of said fine, $3,472.49, with interest thereon from the date of payment. Judgment was entered accordingly, and after affirmance by the General Term the plaintiff appealed to this court.

*Alexander T. Goodwin* for appellant. The plaintiff was entitled to recover on the accepted draft, and the denial of the motion for a new trial was, in that respect, erroneous. (2 Pars. on Cont. [8th ed.] 400.) The defendant was not entitled to recover on the counterclaim alleged in the answer. (*Brown* v. *M. & T. Bank*, 16 App. Div. 207; *Gilbert* v.

*Wiman*, 1 N. Y. 550; *Nat. Bank of Newburgh* v. *Bigler*, 83 N. Y. 51; Story on Agency [9th ed.], §§ 339–341; Baylies on Sur. & Guar. 129; *Putnam* v. *B. & S. A. R. R. Co.*, 55 N. Y. 108; Sedg. on Dam. [8th ed.] §§ 122–124, 126; 3 Kent's Comm. [14th ed.] 267.) This court has power to examine the evidence and to reverse the judgment and order if satisfied that it was insufficient to justify the verdict. The provisions of the Code as to decisions rendered by the Appellate Division have no application to this case. (*Hudson* v. *R., W. & O. R. R. Co.*, 145 N. Y. 408; *Linkauf* v. *Lombard*, 137 N. Y. 417.) The admission in evidence of the pamphlet alleged to contain "the General Ordinances of the Custom House of the Island of Cuba" was error. (*Lambert* v. *Hoffman*, 79 N. Y. S. R. 806; *Taylor* v. *Chamberlain*, 6 App. Div. 38.)

*Frederic J. Swift* and *Charles W. Dayton* for respondent. The exception of plaintiff to the introduction in evidence of the book containing the general ordinances of the custom house of the island of Cuba was not well taken. (Code Civ. Pro. § 942.) Plaintiff's failure and neglect to discharge duties which it owed defendant established a cause of action. (*Hardy* v. *City of Brooklyn*, 90 N. Y. 435; *Harmony* v. *Bingham*, 12 N. Y. 107; *Pearsall* v. *W. U. T. Co.*, 124 N. Y. 256; *M. D. Foundry* v. *Hovey*, 38 Mass. 441; *Pollett* v. *Long*, 56 N. Y. 200; *O'Neill* v. *N. Y., O. & W. R. Co.*, 115 N. Y. 579; *Morris* v. *Sliter*, 1 Den. 59; *M. B. Co.* v. *Zingsen*, 48 N. Y. 247; *Kirk* v. *Gibbs*, 1 H. & N. 810.) The failure of plaintiff to deliver at a specified place subjected defendant to damage, *i. e.*, the fine, and plaintiff is liable for all damages arising from this breach of contract. (*Tompkins* v. *Dudley*, 25 N. Y. 273; *Barker* v. *Hodgson*, 3 M. & S. 267; *Phillips* v. *Taylor*, 17 J. & S. 318; 101 N. Y. 639; *Bigler* v. *Hall*, 54 N. Y. 167; *Stewart* v. *Stone*, 127 N. Y. 507; *Ward* v. *H. R. B. Co.*, 125 N. Y. 236.) The damages that defendant suffered flowed naturally from the breach of the contract to deliver, and are certain in their nature and

and amount, and, hence, are recoverable. (*Hadley* v. *Baxendale*, 9 Exch. Rep. 341; *Griffin* v. *Colver*, 16 N. Y. 489; *Booth* v. *S. D. R. M. Co.*, 60 N. Y. 490; *Elbidger* v. *Armstrong*, L. R. [9 Q. B.] 473; *Dodds* v. *Hakes*, 114 N. Y. 260; *Allen* v. *McConihe*, 124 N. Y. 347.) This court has no power to examine the evidence. (*Hudson* v. *R., W. & O. R. R. Co.*, 145 N. Y. 412.)

VANN, J. Several interesting questions, ably argued by the learned counsel for the appellant, are not before us, because they were not raised by objection and exception in the trial court. We cannot reverse the judgment appealed from unless the record affirmatively shows the denial of some legal right to the appellant during the progress of the trial, and that such denial was duly excepted to. In a civil action we can only reverse upon exceptions, and are compelled to disregard all errors committed by the trial court, unless they were pointed out by an objection and saved by an exception, no matter how serious those errors may be. (*Wicks* v. *Thompson*, 129 N. Y. 634.) It is necessary for a party who wishes to preserve a point for the consideration of this court to give the trial court a chance to act advisedly by interposing a proper objection, which raises the point, and by taking an exception, which saves the point. No objection, not taken upon the trial, can be urged or considered here. (*Serviss* v. *McDonnell*, 107 N. Y. 260, 265.) The position now taken by the appellant, that the evidence does not warrant the verdict, cannot be sustained, because it did not take that position at the trial. (*Duryea* v. *Vosburgh*, 121 N. Y. 57.) No motion was made to direct a verdict or in the nature of a nonsuit or to dismiss the counterclaim, or to take any issue from the jury. So far as appears from the record, which is the only authentic evidence of the proceedings at the trial, the appellant acquiesced in the submission of all the issues to the jury, and it cannot now be heard to claim that this was error. By not making the objection then, it waived its right to make the objection now. We are confined in our review to the

objections made during the trial, when fortified by excep-
tions, and of these, only three in all, we will briefly consider
the two presented by counsel.

Mr. Reimer, who was United States consul at Santiago de
Cuba from October, 1885, until May, 1892, when the powder
was seized, was called as a witness by the defendant and tes-
tified that the entry of dynamite or blasting powder in Cuba
was prohibited by a decree of the captain-general, except "on
permit and appeal to the authorities." He was then shown a
book and stated that it was in Spanish and contained the gen-
eral ordinances of the custom house of the island of Cuba in
existence in 1892 "by the force of the law," and that it was
the official book generally used. He was thereupon requested
by the defendant's counsel to translate a portion of the book,
which was offered in evidence. The plaintiff objected on the
ground that no proper foundation had been laid for its intro-
duction, and the objection having been overruled it duly
excepted. The witness thereupon translated and read in
English a regulation of the Spanish government as follows:
"The consignment of the vessel admitted, the consignee is
directly responsible to the Acienda, which is the Custom
House, for the duties and fines which the vessel or the cargo
has to pay, no matter what it is, and also all extraordinary
expenses which may be occasioned by the necessity of having
to re-embark the cargo or part of it. When the consignee is
also the agent for the clearing of the vessel, he will have that
subsidiary responsibility for all payments which have been
made. The owners of the vessel and cargoes that belong to
them are subsidiarily responsible for the duties, fines and
charges which the captain incurs." The witness further tes-
tified, without objection, that the Spanish law, upon the fail-
ure of a person to pay a fine imposed under the circumstances
disclosed by the evidence, not only authorized a levy on his
property, but also prevented him from doing business until
the fine was paid. He also stated that he tried to have the
money restored, but "unfortunately, as in all these Spanish
cases, I was not successful. Once you put anything into the

Spanish government, and it is held and you cannot get it back."

The objection made to the introduction of the ordinance in question was very general. If it had been more specific, *non constat*, it would have been obviated on the spot. Under the circumstances, we think that sufficient foundation was laid for this evidence under section 942 of the Code of Civil Procedure, which provides that " a printed copy of a statute, or other written law, of another state, or of a territory, or of a foreign country, or a printed copy of a proclamation, edict, decree, or ordinance, by the executive power thereof, contained in a book or publication, purporting or proved to have been published by the authority thereof, or proved to be commonly admitted, as evidence of the existing law, in the judicial tribunals thereof, is presumptive evidence of the statute, law, proclamation, edict, decree, or ordinance." The book received in evidence was a copy of an ordinance of the government, " printed in Spanish," in existence by the force of law, and was the official book in general use. While it was not proved, in so many words, to have been published by the authority of the Spanish government, the fact that it was the official book of ordinances in general use, was some evidence of publication by the government, as it could only be official through the action of the government. The book itself is not before us, so that we cannot say from inspection, as the trial court could, whether it purported to have been published by the requisite authority or not, but the facts stated warrant that presumption, in the absence of a more specific objection.

The court charged the jury, in substance, that if the plaintiff agreed to furnish the agents of the defendant in Santiago de Cuba with such documents as would authenticate and legalize the shipment of the powder, and it neglected to do so, and that as the direct result of such neglect the powder was seized and confiscated by the Spanish government and a fine was imposed upon such agents, the plaintiff was liable to the defendant for the amount of the fine. The plaintiff excepted to that part of the charge " respecting the liability for negli-

ligence or wrong," and to that part "which refers to any liability being imposed upon the agents by reason of any act or omission of the shippers referred to in the charge."

The exception, as we understand it, simply raises the question whether the plaintiff was under "any liability" for neglecting to furnish the defendant's agents with the papers necessary to lawfully land the powder, as it had expressly agreed to do. The plaintiff, with full knowledge of the facts, made a lawful contract and failed to keep it. It not only knew what documents were necessary in order to lawfully land the powder, but it also knew that the failure to furnish them to the consignees would make them liable for a violation of law in attempting to import an interdicted article. It contracted with reference to this liability in agreeing to furnish those documents to the agents of the defendant in Santiago and thereby place them in a position where they could lawfully receive the powder. This agreement, if it had been performed by the plaintiff, would have protected the defendant and its agents from any fine for a violation of the laws of the country where the powder was to be landed. It neglected to keep its agreement, and the direct result of this negligence was to place the defendant and its agents, without any fault on their part, in the position of violating the law and to subject them to the imposition of a fine which they were compelled to pay. Having virtually agreed to so ship the powder that the defendant could receive it without liability to a fine, it shipped it in violation of law and thereby made the defendant responsible for a fine imposed in consequence of such violation. We think, as was held by the learned General Term, that the fine imposed was the natural and probable result of the breach of contract, that it was within the contemplation of the parties when they made the contract, and that the loss should be borne by the party who was guilty of the breach.

The exception, therefore, was not well taken, and the judgment should be affirmed, with costs.

All concur, except GRAY and MARTIN, JJ., absent.

Judgment affirmed.