(159 App. Div. 702)

### PEOPLE v. PORTMAN.

(Supreme Court, Appellate Division, Second Department.   December 31, 1913.)

1. BIGAMY (§ 11\*)—PROSECUTION—EVIDENCE—SUFFICIENCY.

In a prosecution for bigamy, evidence *held* sufficient to sustain a finding that accused had been previously married.

[Ed. Note.—For other cases, see Bigamy, Cent. Dig. §§ 50–53; Dec. Dig. § 11.\*]

2. CRIMINAL LAW (§ 429\*)—FOREIGN LAWS—ADMISSIBILITY IN EVIDENCE.

Under Code Cr. Proc. § 392, providing that the rules of evidence in civil cases are applicable to criminal prosecutions, and under Code Civ. Proc. § 942, authorizing the admission in evidence of printed copies of the statutes of foreign states, the general statutes of a foreign state, when printed in a book purporting to have been published by the authority thereof or proven to be commonly admitted as evidence of the existing laws, are admissible in evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1018, 1020; Dec. Dig. § 429.\*]

3. CRIMINAL LAW (§ 1186\*)—IMMATERIAL ERROR—VARIANCE.

In a prosecution for bigamy, a variance between an allegation of the indictment that the first marriage occurred in the county of Kings, and proof that it occurred in an adjoining state, is immaterial in view of Code Cr. Proc. § 285, providing that a proceeding shall not be affected by

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

reason of an imperfection in a matter of form which does not tend to prejudice the substantial rights of the accused.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3215–3219, 3221, 3230; Dec. Dig. § 1186.*]

4. BIGAMY (§ 9*)—PROSECUTION—EVIDENCE.

In a prosecution for bigamy, evidence that accused had held out a woman then living, from whom he had not procured a divorce, as his wife, and that on his application for a license for a second marriage he stated that he had been married but that his first wife was dead, is admissible on the issue of whether accused had been married to the first woman.

[Ed. Note.—For other cases, see Bigamy, Cent. Dig. §§ 34–53; Dec. Dig. § 9.*]

5. CRIMINAL LAW (§ 1169*)—EVIDENCE—ADMISSION—CURE OF ERRORS.

In a prosecution for bigamy, any error in the unqualified admission of evidence that accused had previously held out another woman, then living, as his wife, and that he had stated in his application for a marriage license that he had been married before but that his wife was dead, was cured by an instruction that the state, having alleged that accused was first married on the 12th day of April, 1893, is concluded by that allegation and must prove a marriage on that date beyond a reasonable doubt to authorize a conviction.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 754, 3088, 3130, 3137–3143; Dec. Dig. § 1169.*]

Appeal from Kings County Court.

Isaac Portman was convicted of bigamy, and he appeals. Affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, RICH, and PUTNAM, JJ.

Frank X. McCaffry, of Brooklyn, for appellant.

Edward A. Freshman, Asst. Dist. Atty., of Brooklyn (James C. Cropsey, Dist. Atty., of Brooklyn, on the brief), for the People.

JENKS, P. J. [1] The charge of the indictment is that the defendant in the county of Kings, on April 12, 1893, did marry Rachel Siegel. Much of the evidence offered by the people was excluded or was stricken out, but there is the testimony of the brother-in-law of Rachel Siegel that on the evening of that day and year, at his home in Passaic, N. J., 40 or 50 people were assembled, including the defendant and Rachel Siegel and Rabbi Levinson; that the defendant and Rachel Siegel "said what they had to say"; that the witness supposed that "they were satisfied to get married"; that Jewish weddings always take place under a canopy; that there was a canopy in the house for that evening only. And there is the testimony of the wife of the said witness that she also saw the defendant and Rachel and the rabbi; that she heard the defendant and Rachel say that they were willing to marry one another. "Q. What else did he say, and what else did she say? A. What else? They married." And she testifies that defendant placed a ring on Rachel's finger. This witness corroborated her husband as to the canopy and also testified that it was used exclusively at Jewish weddings. She also testified that she had seen the said rabbi perform other marriages in New Jersey. It was testified that Rabbi Levinson was dead. There were no denials of these testimonies. I

think that upon the record the proof was sufficient to justify a finding of the marriage. Fleming v. People, 27 N. Y. 329; Lord v. State, 17 Neb. at 529, 23 N. W. 507; People v. Calder, 30 Mich. at 88; Russell on Crimes (7th Eng. Ed.) vol. 1, p. 982; Bishop on Marr., Divorce & Separation, §§ 1048, 1055; Greenleaf on Evidence, vol. 3, § 204; Wharton's Crim. Evidence, § 170.

[2, 3] The general statutes of New Jersey as offered were properly . read in evidence. Section 942, Code of Civil Procedure, and section 392, Code of Criminal Procedure; Congregational Unitarian Soc. v. Hale, 29 App. Div. at 399, 51 N. Y. Supp. 704; Hecla Powder Co. v. Sigua Iron Co., 157 N. Y. at 443, 52 N. E. 650; Matter of Huss, 126 N. Y. 537, 27 N. E. 784, 12 L. R. A. 620. The variance between the charge that the first marriage occurred in the county of Kings, and the proof that it occurred in New Jersey, was not material in this case. Section 285, Code of Criminal Procedure.

[4, 5] The court admitted the testimony of Goldberg, the brother-in-law of Rachel Siegel, that the defendant had lived in New York City with the woman and had named her as his wife, and of M. Greenberg that the defendant had called the said Rachel his wife, and there was read in evidence the sworn application of the defendant for the marriage license with the alleged second wife, in which he stated that his name was Portman, that this was his second marriage, and that his first wife was dead. Although such testimony may have been insufficient in itself to establish the marriage (see discussion of the "eyewitness" rule in Wigmore on Evidence, § 2086; People v. Humphrey, 7 Johns. 314; Fenton v. Reed, 4 Johns. 52, 4 Am. Dec. 244; Hayes v. People, 25 N. Y. 390, 82 Am. Dec. 364; Eisenlord v. Clum, 126 N. Y. 552, 562, 27 N. E. 1024, 12 L. R. A. 836; Clayton v. Wardell, 4 N. Y. 230; Gahagan v. People, 1 Parker, Cr. R. 378), yet it was competent and relevant upon the issue whether there had been a marriage (Gahagan v. People, 1 Parker, Cr. R. 378, cited by Wigmore on Evidence, 2086). See, too, Miles v. United States, 103 U. S. 304, 26 L. Ed. 481; Wigmore on Evidence, § 2086.

The court at the request of the defendant's counsel charged finally:

"This indictment having charged this defendant with having entered into a marriage ceremony, marriage relation, marriage contract, with Rachel Siegel, on the 12th day of April, 1893, that the people are concluded by that allegation and must establish a marriage upon that date, beyond a reasonable doubt, and in the event of their failure to so establish such marriage upon such date, beyond a reasonable doubt, the defendant is entitled to an acquittal," and also that the jury "must find the establishment of the marriage contract upon the date that I have referred to, as a separate proposition, beyond a reasonable doubt, before they can take up the consideration of any subsequent relationship."

These instructions cured any previous error of the court as to the force and effect of the testimony last specified. Greenfield v. People, 85 N. Y. at 90, 39 Am. Rep. 636; People v. Benham, 160 N. Y. at 443, 55 N. E. 11.

I advise affirmance of the judgment of conviction. All concur.