### SIZSE v. WEGMANN.

(Supreme Court, Appellate Division, Second Department. July 30, 1915.)

1. LANDLORD AND TENANT ⬳164—CONDITION OF PREMISES—CLOTHES POLE—INSPECTION.

Reasonable care required that a landlord, in the rear of whose tenement property there was a clothes pole, 35 feet high, for the use of tenants, with spikes attached to enable one to climb up to adjust pulleys and clotheslines, should inspect such pole at appropriate intervals.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 630–637, 639, 641; Dec. Dig. ⬳164.]

2. LANDLORD AND TENANT ⬳169—INJURY TO TENANT—ACTION—QUESTION FOR JURY.

Evidence in an action to recover damages for the death of a son, injured by the falling of a clothes pole on the premises of the defendant landlord, held to make a prima facie case of negligence for the jury.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 644–646, 664–667, 681–684; Dec. Dig. ⬳169.]

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Trial Term, Kings County.

Action by Annie A. Sizse, as administratrix of the estate of Bernard Sizse, deceased, against Meta Wegmann. From a judgment for defendant, and from an order denying her motion for a new trial, plaintiff appeals. Judgment and order reversed, and new trial granted.

Argued before JENKS, P. J., and CARR, STAPLETON, MILLS, and RICH, JJ.

Maurice B. Rich, of New York City, for appellant.

James F. Donnelly, of New York City (Floyd K. Diefendorf, of New York City, on the brief), for respondent.

CARR, J. This action was brought by an administratrix to recover damages for the death of Bernard Sizse, her son, through the alleged negligence of the defendant. The decedent lived with his mother, the plaintiff, at the premises No. 227 Hamburg avenue in the borough of Brooklyn. In the rear yard of the premises there was a clothes pole, about 35 feet high, for the use of the tenants. Spikes were attached to the pole to enable one to climb up to adjust pulleys and clotheslines. A line ran from the plaintiff's window to the top of the pole, through pulleys, one on the pole, another on the side of the house. The plaintiff had resided on the premises for about 15 months. The pole was there when she came. On October 28, 1913, the Sizse family were moving from the premises. One of the daughters attempted to take their clothesline by hauling it through the pulleys. It became entangled by a knot at the pulley on the pole. The decedent, a son, went down to the rear yard and ascended the pole to disengage the clothesline. When he got to the top, the pole swayed and snapped off at its butt, close to the ground. The decedent was thrown down and suffered various severe injuries, which, according to the proofs, caused subsequently his death.

[1, 2] Witnesses who saw the pole shortly after the accident described the broken ends as black, mushy, rotten, with a sound core of only a finger's thickness. There was no proof that the landlord, the defendant, had actual notice of the condition of the pole, or that any one had taken notice that decay had set in. The plaintiff set out to prove that the pole had been rotten at its base for a year or more, and that the condition could have been ascertained by simple tests, such as removing some of the earth and hammering the pole at its base, or using a gouge or a penknife to test the liveliness of the wood. The trial court dismissed the complaint at the close of the plaintiff's proofs, on the expressed ground that the plaintiff had not "brought home sufficient notice to the landlord." If the landlord was under no duty to inspect the pole for the purpose of detecting decay, then the trial court was right.

The respondent relies upon Lenz v. Aldrich, 6 App. Div. 178, 39 N. Y. Supp. 1022, affirmed 154 N. Y. 753, 49 N. E. 1099. In that case there was a clothes pole in a rear yard of a residence, which broke and injured one of the tenants. That pole, however, was but 6 or 7 inches in diameter and but 7 feet high. It was proved that the pole "when originally put up was a good pole and of proper material for the pur-

pose." There was likewise proof that the probable life of such a pole was from 8 to 10 years. It had been up only 5 years, when it rotted through about an inch above the ground. There was proof by experts that the decay must have been going on for about a year. The court held, opinion by Cullen, J., that the landlord was not obliged to make "a critical examination in detail of a clothes pole during a period when, by the ordinary life of such poles, the pole should have been sound, and there was nothing to give occasion for suspicion to the contrary." There the proof as to the probable lifetime of a good pole was given by the defendant. Here there is no proof of that character, as the defendant did not go into her case at all. The pole was in the yard when the plaintiff came to the premises. What was its condition when set up originally, and what its probable life at that time, does not appear.

Again, the poles were not of a similar character. A pole 6 inches in diameter and 7 feet high is such an ordinary feature of a back yard as not to suggest danger or require critical inspection. A pole 35 feet high, intended to bear a human body ascending it, is quite another thing. If such a pole should break, grave danger was probable. In recent years these high poles have come into frequent use in the rear yards of tenement houses. Hundreds of them may be seen from the windows of elevated railroad cars in this city. They are not properly subject to the rule declared in Lenz v. Aldrich, ut supra. Reasonable care would require their inspection at appropriate intervals. We think the plaintiff in this case made out a prima facie case, and that it was error to dismiss the complaint.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.