J. Irwin Shapiro, J.
On consent, only the issue of liability was submitted to the jury, the question of damages being reserved for determination by the court, in the event that the jury resolved the issue of liability in favor of the plaintiff.
The jury unanimously found for the plaintiff and it now becomes necessary to pass upon the motion to dismiss made by the defendants at the end of the whole case and upon their motion to set aside the verdict and for a directed verdict in their favor, upon all of which decision was reserved.
The plaintiff, Hannah Feldman, was and is the daughter of the defendants, Molly Feldman and Isidore Feldman. On October 16, 1954, about 11:30 in the morning, while in the back yard of her parents’ joint residence and business premises, she was injured when a thick, 40-foot wooden telegraph-like pole, with spikes on it, used as one end of a clothesline installation, fell upon her. She was at the time engaged in hanging up the family wash, which she did only once in a great while. She was helping out on this occasion because her mother was in the hospital. Plaintiff had completed hanging the wash and had gone back into the kitchen of the house Avhen, upon looking out of the AvindoAV almost immediately thereafter, she saw that the last sheet she had hung on the line nearest the house was dragging on the ground. She went out to correct this situation and it was Avhile she was attempting to do so that the pole fell upon her.
The plaintiff was 27 years of age at the time of the accident, single and residing Avith her parents in the premises, to Avhom she contributed for the support of the household from her salary.
Proof of the defect in the pole came from plaintiff’s brother-in-law. He testified that during the Summer of 1954, some months before the occurrence, he had on one or two occasions noticed an area of wetness about the portion of the pole which Avas directly above the ground level and that he then noticed that the pole Avas not in an exactly upright position but that it veered about 10 degrees off the vertical. He told his father-in-law, one of the defendants, about both conditions. Pictures of the pole showed deterioration at its base.
When the verdict was received, the defendants moved to set it aside in the following language: “ Tour Honor, I respectfully move to set aside the verdict of the jury as contrary to the law and the evidence in this case. I submit to Tour Honor that there has been no proof of a defect here for Avhich there would be liability attached for a person living in the same household. I also submit to Tour Honor that they have failed to prove *690 notice of defect and could not call ¡for action on the part of the owner. ’ ’
The only other time during the entire trial that the defendants ever questioned the responsibility of the defendants to the plaintiff “as a resident in the household with her mother and father ’ ’ was in a request to charge the jury that she, as such resident, “ assumed the risk of ordinary defects in the premises ” to which the court responded, “ Yes. I so charge.”
At the end of the plaintiff’s case, the defendants’ motion to dismiss was as follows: “ mb. curtís : If Your Honor pleases, at this time on behalf of the defendants, I respectfully move for a dismissal of the plaintiff’s complaint on the ground that the plaintiff has failed to prove an actionable cause of negligence against the defendants and has failed to prove freedom of contributory negligence on the part of Hannah Feldman in this respect. ’ ’ At the end of the whole case, and during his summation, defendants’ counsel said: “By the way, Your Honor, I think I forgot to renew my motions. I presume it will be the same ruling. Will Your Honor accept that? ” To which the court replied: “ As long as you remember it now. ’ ’ Defendants ’ counsel then said: “ I will renew the motion and also move for a directed verdict. ”
■ It is thus apparent that at no time during the presentation of proof or by their motion to dismiss at the end of the plaintiff’s case, or at the end of the whole case, did the defendants ever suggest that the plaintiff’s status as a member of the household precluded her right to recover or that her status was that of a social visitor. Indeed, as has been pointed out, it was not until after the court had charged the jury that the defendants for the first time asked that plaintiff “as a resident in the household with her mother and father assumed the risks of ordinary defects in the premises” (emphasis supplied), but even at that time no request was made that the court charge the jury that the plaintiff took defendants’ property as she found it or that they owed her no duty to make or keep the premises safe or that their only duty to plaintiff was to refrain from active wrongdoing.
The court charged as defendants requested and it is apparent from the unanimous verdict of the jury in favor of the plaintiff that they found that the particular defect in these premises, to wit, a thick 40-foot pole tilting at a 10-degree angle, and wet at its base, of all of which the defendants had actual notice, was not an “ ordinary ” defect. In the opinion of the court, the jury was fully justified in so finding. (See Sizse v. Wegmann, 169 App. Div. 112, 115.) The defendants were bound *691 to recognize the perilous position in which the plaintiff was placed while hanging wash on the line caused by a condition of which they had knowledge, and of which the plaintiff was ignorant, and they were, therefore, bound to employ care commensurate with the circumstances and the danger. There was here no ordinary defect but a substantial hazard of which they but not the plaintiff were aware. Failing to disclose and make known that knowledge or to take steps to obviate the danger was a condition which the jury could find to be negligence of more than an ordinary character.
The defendants in their memorandum seek to have the verdict set aside and the complaint dismissed upon their present contention that the plaintiff was a social guest in the premises, and that, therefore, she took the premises as she found them, and that defendants owed her no duty to make the premises safe for her use.
Assuming, arguendo, that there is some merit to that contention, it is now too late to raise that issue.
In Brown v. Du Frey (1 NY 2d 190, 195-196) the Court of Appeals said:
“ It is well settled that the charge of the Trial Judge, insofar as it is not excepted to, becomes the ‘ law of the case ’, binding upon the parties, even though it be an erroneous statement of the law of this State (see Buckin v. Long Is. R. R. Co., 286 N. Y. 146; Berner v. Board of Educ., 286 N. Y. 174; Leonard v. Home Owners’ Loan Cory., 297 N. Y. 103; McCabe v. Cohen, 294 N. Y. 522; Commercial Cas. Ins. Co. v. Roman, 269 N. Y. 451; Graves v. Rudman, 235 App. Div. 380, appeal dismissed 260 N. Y. 628; Roberts v. Snyder Mfg. Co., 242 App. Div. 244).
“ It is true that, following the rendition of the verdict, counsel for defendant moved 1 to set aside the verdict as being contrary to the facts, contrary to the weight of the evidence, and contrary to the law and on all the grounds specified in Section 549 of the Civil Practice Act including excessiveness.’ (Emphasis supplied.) However, that motion does not aid defendant. We are not concerned, in this court, with facts or the. weight of the evidence (the only fact left to the jury by the charge was that of damages) and the term ‘ contrary to the law’ as found in section 549 of the Civil Practice Act does not apply to an error of the court in giving the jury the instructions upon which their verdict is to be based. It has reference to a verdict which the law as charged by the Judge does not authorize the jury-to render upon the evidence presented to them. (See 7 Carmody-Wait on New York Practice, § 24.) The act of the Judge in *692 erroneously charging the jury upon the law in the case, although it necessarily results in a verdict not authorized by law, is not an error for which the jury is responsible, but is an error of the Judge, to be pointed out by an exception and if a party fails to take an exception he cannot raise the question upon a motion for a new trial.” (All emphasis in original.)
The record in this case makes it evident that defendants, except for the one request above noted and which was granted, acquiesced in the submission of the case to the jury upon the theory outlined by the court in its charge. It was too late after the jury had returned a verdict adverse to them for the first time to raise the issue now sought to be presented. (Brenan v. Moore-McCormick Lines, 3 A D 2d 1006; Klutts v. Citron, 2 N Y 2d 379; Cekala v. Mentzinger, 243 App. Div. 544; Towne v. Stukey, 275 App. Div. 689; Corriera v. Third Ave. Tr. Corp., 277 App. Div. 82; Hecla Powder Co. v. Sigua Iron Co., 157 N. Y. 437; Laby v. Gordon, 10 A D 2d 988.)
The court has assumed that the position of the defendants, if timely urged, would be correct. There is, however, grave doubt of that fact. This plaintiff was an emancipated daughter, contributing from her own salary to the maintenance of the family household. Under such circumstances though the court has found no New York case on the subject, it is the court’s opinion that she was in the same position vis-a-vis the defendants as any business visitor to the premises. (3 Eestatement, Torts, § 372.) It is there stated that, “ A member of the possessor ’s family, although ordinarily a bare licensee * * * is a business visitor if he pays board or gives other valuable consideration for his residence upon the possessor’s land.” If the Eestatement of the Law of Torts correctly represents the New York law on the subject the request to charge that the plaintiff “ as a resident in the household of her mother and father assumed the risks of ordinary defects in the premises ” and which the court granted, was more favorable to the defendants than they were entitled to receive.
For the reasons above set forth, the motion of the defendants to dismiss at the end of the whole case and upon their motion to set aside the verdict and for a directed verdict in their favor are denied.
The plaintiff is permanently crippled. She stayed at Queens General Hospital for about 10 months where her left leg, which was broken in two places, was put into traction in a special frame; her neck was broken and she was on her back for about 8 months during that 10-month period. After her stay of 10 months at the Queens General Hospital she was taken to the *693 Rehabilitation Ward of Bellevue Hospital where she stayed for about 20 months. At Bellevue Hospital “ They taught me to do things with what I had left by using different gadgets and using different muscles.” Plaintiff has no power in her hands or wrists and she can only raise either hand partially, or, as the court noted on the record, ‘ ‘ about half way with the fingers bent.” Plaintiff has no motion at all in her legs. She cannot walk and she is always confined to a wheel chair. She cannot wash, bathe, clean or dress herself and she has no control over her bowel movements or urinary evacuation.
At the time of the occurrence the plaintiff was a bookkeeper receiving a salary of $68 per week. She had been working for about nine years. She is now permanently disabled so far as engaging in any endeavors are concerned, or even helping herself in her most elemental personal needs.
Aside from this permanent bodily injury the plaintiff, who is quite apparently an intelligent person, must have suffered and must continue to be suffering extreme mental anguish by reason of her condition of permanent dependence upon others and her inability to be a useful member of society.
After earnest and careful consideration of all of the elements involved, such as the plaintiff’s age, her permanent loss of earning capacity; her permanent dependence upon others; her pain and suffering, past, present and future; and her grave injuries, the court has concluded that the fair and reasonable amount necessary to make the plaintiff legally whole is $200,000.
Under the circumstances, judgment is directed in the plaintiff’s favor and against the defendants in the sum of $200,000.