MALVINE GRAY, Respondent, *v.* THE BROOKLYN HEIGHTS RAILROAD COMPANY, Appellant.

1. PRACTICE — ACTION BY WIFE FOR NEGLIGENCE AND BY HUSBAND FOR LOSS OF SERVICES ARISING FROM SAME INJURY TRIABLE TOGETHER — INCONSISTENT VERDICTS REQUIRE SETTING ASIDE OF BOTH. *It seems,* that the practice of trying, with the consent of all concerned, the wife's action for personal injuries caused by negligence and the husband's action for loss of services owing to the same injury, at the same time and submitting them to the same jury upon the same evidence, should not be discouraged, since it saves the time of the court and witnesses and reduces the expenses of the parties. When, however, the two actions are thus tried together and inconsistent verdicts are rendered, sound practice requires both verdicts to be set aside at once, without attempting by analysis of the evidence, or otherwise, to discover whether either should be allowed to stand.

2. EVIDENCE — INCOMPETENCY OF OPINIONS OF LAY WITNESS. Where the main issue in an action for negligence is whether the plaintiff had had a miscarriage, which fact had not been established, the denial of a motion to strike out her answer to a question assuming such fact, upon the ground that it involved a conclusion of the witness, constitutes reversible error.

3. SAME. Evidence of witnesses who in their opinion had had miscarriages, to the effect that what happened to the plaintiff was the same as had happened to themselves, is incompetent and its reception constitutes reversible error.

*Gray* v. *Brooklyn Heights R. R. Co.,* 72 App. Div. 424, reversed.

(Argued June 7, 1903; decided June 25, 1903.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered May 5, 1902, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

This action was brought to recover damages for personal injuries sustained by the plaintiff, as she alleged, through the negligence of the defendant while she was a passenger upon one of its cars, which collided with another and thus caused whatever injury she sustained.

The plaintiff's action was tried at the same time as an action brought by her husband to recover damages for the loss of her services resulting from the same injury. By consent the two actions were tried together and submitted to the same jury upon the same evidence and at the same time. Although the court charged that if the plaintiff was injured by reason of the accident, "then each of these parties is entitled to a verdict," the jury found for the plaintiff in this action and against her husband, the plaintiff in the other action. Upon the appeal of the husband to the Appellate Division from the judgment entered on the verdict against him and from an order denying his motion for a new trial, the judgment and order were reversed and a new trial was granted. (72 App. Div. 454.) The motion for a new trial in this case was also denied, and the order denying the motion and the judgment entered on the verdict were unanimously affirmed by the Appellate Division. The defendant obtained leave and came here.

The facts, so far as material, are stated in the opinion.

*I. R. Oeland* and *George D. Yeomans* for appellant. The two actions of the wife and husband having been tried before the same jury on the same charge of the court and the same evidence, and the jury having returned inconsistent verdicts, the court should have set aside both verdicts. (*Hyatt* v. *N. Y. C. R. R. Co.*, 6 Hun, 306; *Gray* v. *B. H. R. R. Co.*, 72 App. Div. 454; *People* v. *Masset*, 7 N. Y. Cr. Rep. 393; *Johnson* v. *La Barge*, 46 Mo. App. 433; *Goff* v. *Chippewa River Co.*, 86 Wis. 237; *Darcy* v. *F. L. Co.*, 87 Wis. 245.) The witnesses Hannah O'Connor and Kathleen Stern, not being expert witnesses, it was error to permit them to make comparisons as to miscarriages they had seen with the plain-

29

tiff's miscarriage. (*Sylvester* v. *Crohan*, 63 Hun, 509; *Brown* v. *M. & H. R. Co.*, How. App. Cas. 52.)

*Henry Escher, Jr.*, and *George F. Elliott* for respondent. There was nothing inconsistent in the decisions rendered by the Appellate Division in the two actions by the wife and the husband against this defendant. (*People* v. *Masset*, 7 N. Y. Cr. Rep. 393; *Shailer* v. *Morgan*, 16 Daly, 166; *Amherst College* v. *Ritch*, 151 N. Y. 282; *Beardsley* v. *N. Y., L. E. & W. R. R. Co.*, 15 App. Div. 251.) The testimony of the witnesses O'Connor and Stern and the testimony of the plaintiff, as to the miscarriage, was properly admitted. (*De Witt* v. *Barly*, 17 N. Y. 340; *Clark* v. *Baird*, 9 N. Y. 183; Greenl. on Ev. [16th ed.] 441; *Collins* v. *N. Y. C. R. R. Co.*, 109 N. Y. 243; *Duntzy* v. *Van Buren*, 5 Hun, 648; *Friedman* v. *Breslin*, 51 App. Div. 268; Code Civ. Pro. § 191.)

VANN, J. The practice of trying, with the consent of all concerned, the wife's action for personal injuries caused by negligence and the husband's action for loss of services owing to the same injury, at the same time and submitting them to the same jury upon the same evidence, should not be discouraged, for it saves the time of the court and witnesses and reduces the expenses of the parties. When, however, the two actions are thus tried together and inconsistent verdicts are rendered, we incline to the view that sound practice requires both verdicts to be set aside at once, without attempting by analysis of the evidence, or otherwise, to discover whether either should be allowed to stand. No other course is safe, for it cannot be told with reasonable certainty what facts the jury found. The presumption is that they willfully disregarded the instructions of the court and reached a conclusion by some method not warranted by law. We are unable, however, upon this appeal to give practical effect to the views thus entertained by us, because the error was not raised by an exception, and we cannot review the order denying a motion

for a new trial. (*Hecla Powder Co.* v. *Sigua Iron Co.*, 157 N. Y. 437.)

The plaintiff has recovered a judgment for substantial damages, and its main support is the claim made at the trial, but not alleged in the complaint, that a miscarriage resulted from the injury which she sustained. Upon the trial she testified that she was married at seventeen, and nine months thereafter a dead fœtus was removed from her by force. After that she was troubled with displacement of the womb, and on the 2nd of November, 1899, went to a hospital for treatment. Nine days later a surgical operation was performed upon her, and on the 17th she returned home and resumed her household duties. On the 8th of December she went back to the hospital for consultation, as she felt strangely and was troubled with nausea. On her way home the car on which she was riding collided with another car of the defendant, and, although the jolt was so slight that no other passenger seems to have noticed it, she was injured so that she commenced to bleed. Soon after, something about as large as an egg, and colored like blood, passed from her, and after that she bled for about two weeks longer.

While upon the stand as a witness in her own behalf she stated that she had been bleeding from the time of the accident until the day the clot came out. The record then continues as follows, the questions having been asked by her own counsel: "Q. How long did you continue to bleed after that? Witness: After the miscarriage? Plaintiff's counsel: Yes. Witness: Well, at least for two weeks. Defendant's counsel: I move to strike that out as a conclusion. Whether or not it was a miscarriage is in dispute. The Court: I think I will allow her to state what it was. Defendant excepts."

We think this was reversible error. While the defendant's counsel did not object until after the witness had answered, the court, in denying the motion to strike out, determined that the question, as modified by the witness with the assent of the plaintiff's counsel, was proper. The judge held that the evidence was competent, which precluded the defendant's

counsel from asking for instructions to disregard it. The rul-ing in effect sanctioned this question, "How long did you continue to bleed after the miscarriage?" although the word "miscarriage" had not until then appeared in the evidence and the subject of miscarriage was the main question litigated. The question assumed a fact not proved and the question and answer together involved a conclusion of the witness which the law did not permit her to give. It was the same as if she had been allowed to swear that she had had a miscarriage as the result of the accident, which would be a plain violation of the rule governing the subject. Witnesses should state facts and the jury should draw conclusions.

Mrs. Hannah O'Connor, a witness for the plaintiff, testified that she had had three miscarriages and had attended her daughter-in-law who had also had three. She saw the sub-stance which dropped from the plaintiff and described it "as like a jelly, not very thick, of a pale flesh color, bloodish like." After stating that she saw the substance that came from her-self five weeks after conception, she was asked by the plain-tiff's counsel; "How did that compare with the one you saw from Mrs. Gray?" This was objected to as "incompetent, irrelevant and improper, instituting comparison." The presid-ing judge said he would allow her to testify, if she could, that it was similar in appearance to what passed from her, and the defendant excepted. She answered: "It was like mine."

Kathleen Stern was also sworn for the plaintiff, and after testifying that she had had a miscarriage "at six weeks" and that she saw what came from the plaintiff, was asked: "In what respect, if any, did this miscarriage or this matter that came from Mrs. Gray resemble what you had?" This was objected to upon the same grounds, but the objection was overruled, the defendant excepted and the witness answered: "A great deal like what I had."

We think these rulings were erroneous, because lay wit-nesses, even with some experience in midwifery, should not be permitted to compare germs of life at its earliest stage and announce their conclusions. The subject was not a matter of

common knowledge or observation. The professional testimony tended to show that life cannot be discovered with reasonable certainty by ocular inspection made but a few days after conception, and that a microscopic examination is necessary in order to see whether there are membranes, which is a conclusive test. Whether the substance was clotted blood from menstruation, or an embryo, was not for these witnesses to determine, yet they were virtually allowed to do so. They were permitted to describe one thing by stating that it was like another of which the jury were equally ignorant, except as informed by the mere conclusion of a non-expert. The comparison involved a conclusion, or the expression of an opinion, and while this is sometimes permitted, *ex necessitate*, for the purpose of description, it should not be allowed when the thing in question is compared with another thing not described except by the opinion of the witness. Manifestly these witnesses could not have expressed the opinion directly that the plaintiff had had a miscarriage, yet each was permitted to express that opinion indirectly, by saying in substance that what happened to the plaintiff was the same as had happened to herself, when she had, in her opinion, a miscarriage. She could not say that the plaintiff's case was like her own. A witness may testify that he had a cold, as that is a matter of common knowledge and experience, but he cannot say : " I had pneumonia and the plaintiff's symptoms were like mine," because it is not the statement of a fact within the range of common knowledge and observation, but of two opinions both of which are incompetent. The witnesses should have stated the facts only, and the jury, guided by the opinions of the physicians so far as they deemed them reliable, should have drawn the conclusion.

Owing to these rulings, which obviously tended to injure the defendant, we feel constrained to reverse the judgment and order a new trial, costs to abide event.

PARKER, Ch. J., HAIGHT, CULLEN and WERNER, JJ., concur; GRAY and MARTIN, JJ., absent.

Judgment reversed, etc.