W. J. Chapin, Appellant, v. Herbert Foege and
Henry Foege, Appellees.

Gen. No. 39,636.

Opinion filed June 21, 1938.

CASSELS, POTTER & BENTLEY, of Chicago, for appellant; CLAUD D. RABER, LESLIE H. VOGEL, RICHARD H. MERRICK, ANTHONY RAS, all of Chicago, of counsel.

ROBERTSON, CROWE & SPENCE, of Chicago, for appellees; BURT A. CROWE, of counsel.

MR. JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

This appeal seeks to reverse a judgment rendered against plaintiff, W. J. Chapin, on the verdict of a jury in an action brought by him against the defendants, Herbert Foege and Henry Foege, for damages for personal injuries alleged to have been sustained by plaintiff as the result of the conduct of Herbert Foege in driving an automobile so negligently that it collided with the automobile which Chapin was driving on Algonquin road near its intersection with Plum Grove road in Cook county. No point is raised on the pleadings.

In his complaint plaintiff charged that defendant Herbert Foege negligently operated the automobile which he was driving and that Henry Foege was the principal and employer of Herbert Foege. The defendants filed an answer denying the negligence charged against them in plaintiff's complaint and also denying that plaintiff was in the exercise of due care. A counterclaim was filed by defendant Herbert Foege, alleging that the collision between the two cars was caused by the negligence of plaintiff and asking damages for injuries to his person and to his automobile. Plaintiff filed an answer denying the allegations of the counterclaim. Subsequently defendant Henry Foege filed an additional answer to plaintiff's complaint denying that defendant Herbert Foege was

his servant or agent in driving the car that collided with plaintiff's automobile.

It is unnecessary to either state or discuss at length the facts and circumstances in evidence since it is conceded in plaintiff's brief that upon the evidence presented the questions of negligence and contributory negligence were properly submitted to the jury. At the conclusion of the trial the court, after instructing the jury, gave it five forms of verdicts, one for every possible verdict that might appropriately be returned upon the complaint and counterclaim. After the jury separated its sealed verdicts upon being opened were found to read as follows:

"We the jury find the defendant Henry Foege not guilty; the defendant Herbert Foege guilty and assess the plaintiff's damages at the sum of no dollars.

"We the jury find the cross-defendant W. J. Chapin guilty and assess the cross-plaintiff Herbert Foege damages at the sum of no dollars."

When the verdicts were read plaintiff moved for a new trial and at the same time a similar motion was entered by defendants, but the latter motion was thereafter disclaimed by defendants. In denying plaintiff's motion for a new trial and rendering judgment upon the verdicts of the jury the trial court entered a draft order, the pertinent portions of which are as follows:

"After arguments of counsel and due deliberation by the court, the said court finds that the verdicts as above set forth and as returned by the jury herein find both W. J. Chapin and Herbert Foege guilty of negligence, and the court construing said verdicts together, finds that by said verdicts it was the intention and meaning of the jury to find both defendants, W. J. Chapin and Herbert Foege guilty of contributory negligence and that the two said verdicts mean 'Not

Guilty' under the pleadings filed in the case and the evidence heard in open court, and the court finds that neither W. J. Chapin nor Herbert Foege is entitled to recover damages by their respective suits and said motion of the plaintiff, W. J. Chapin for new trial is overruled and new trial denied. . . .

"Thereupon plaintiff, W. J. Chapin, enters his motion in arrest of judgment which motion is also overruled. . . .

"Therefore it is considered by the court that the plaintiff, W. J. Chapin take nothing by his aforesaid action and the cross-plaintiff, Herbert Foege, take nothing by his aforesaid action but that both W. J. Chapin and Herbert Foege each go hence without day and do have and recover nothing from each other, or costs or charges in their behalf expended . . ."

Plaintiff contends that "the verdicts of the jury upon the complaint as against defendant Herbert Foege and upon the counterclaim were so uncertain, contradictory and improper that no judgment could properly be entered upon them and that therefore the plaintiff's motions for a new trial and in arrest of judgment should have been granted."

Defendants' theory is that "the trial court was fully justified under the law and the evidence in entering judgment on the verdicts"; that "the trial court was fully justified in finding that by the two verdicts the jury intended and meant to find both plaintiff and defendant Herbert Foege guilty of contributory negligence and in finding that the two verdicts meant 'Not Guilty' "; that the verdicts are easily susceptible of a reasonable interpretation; and that the trial court did not err in approving them and entering judgment thereon.

In so far as the verdicts are concerned the question presented is whether under the pleadings and

the facts and circumstances in evidence the trial court was warranted in construing them as it did as to their legal effect and in entering judgment upon them. No point is made that the verdict as to plaintiff was against the manifest weight of the evidence. The following statement is found in plaintiff's brief: "The plaintiff was either negligent or he was not, and likewise the defendant Herbert Foege was either guilty or he was not. If defendant Herbert Foege was negligent, he was necessarily contributorily negligent. On the other hand if the plaintiff was guilty of negligence, he was also necessarily guilty of contributory negligence." This is a correct statement of the law and the jury was so instructed. Since the doctrine of comparative negligence ceased to prevail in this State it has always been held that where an accident occurs and both plaintiff and defendant are negligent, neither can recover from the other. After a careful examination of the pleadings and evidence it is obvious that the two verdicts considered together could only mean that the jury believed that both plaintiff and defendant Herbert Foege were negligent and careless in the operation of their respective automobiles at the time and place of the accident and that neither of them was entitled to recover damages from the other. While the verdicts returned by the jury were inapt and awkward as to form, there can be no doubt of the propriety of the court's interpretation that "it was the intention and meaning of the jury to find both . . . W. J. Chapin and Herbert Foege guilty of contributory negligence and that the two said verdicts mean 'not guilty' . . . and the court finds that neither W. J. Chapin nor Herbert Foege is entitled to recover damages . . . ."

The following statement on inartificially drawn verdicts is found in 27 R. C. L., pp. 858, 859:

"Although defective in form, if it [the verdict] substantially finds the question in issue in such a way as will enable the court intelligently to pronounce judgment thereon for one or the other party according to the manifest intention of the jury it is sufficiently certain. The mere fact that a verdict is inartificially drawn or is otherwise informal does not vitiate it, as it is to be kept in mind that juries are usually composed of men who are not learned in the forms of law or exact in their use of language, and therefore all reasonable intendments should be made in order to sustain their verdicts when the validity of such verdicts is challenged on merely technical grounds. Moreover, every reasonable construction should be adopted for the purpose of working the verdict into form so as to make it serve. If by reference to the record, any uncertainty in the verdict can be explained it is sufficient to sustain the appropriate judgment; and if the parties could not have been prejudicially affected, the fact that the form is unusual and not according to practice is not such a defect as to justify a reversal."

In *Western Springs Park Dist. v. Lawrence,* 343 Ill. 302, the court in discussing the same subject said at pp. 310, 311:

"In the view which we take of this case we do not feel called upon to decide the questions raised by the objection of Webster to the amendment of the verdict. A verdict is not to be construed with the same strictness as an indictment but is to be liberally construed, and all reasonable intendments will be indulged in its support and it will not be held insufficient unless, from necessity, there is doubt as to its meaning. (*People v. Lee,* 237 Ill. 272.) The rule is, that in determining the sufficiency of a verdict, and the judgment based thereon, the entire record will be searched and

all parts of the record interpreted together, and a deficiency at one place may be cured by what appears at another. (*People v. Tierney*, 250 Ill. 515; *People v. Murphy*, 188 id. 144.) A verdict may be amended by the court or construed by reference to the pleadings and the evidence in the record, and in some instances from the notes of the judge, when the intention of the jury is apparent from the pleadings and the evidence. In considering the verdict itself with a view to its sufficiency the first object is to ascertain what the jury intended to find, and this is to be done by construing the verdict liberally, with the sole view of ascertaining the meaning of the jury and not under the technical rules of construction which are applicable to pleadings. If the meaning of the jury can be ascertained and a verdict on the point in issue can be made out the court will mold it into form and make it serve. (*Law v. Sanitary District*, 197 Ill. 523.)''

The case of *Schwab v. Nordstrom*, 138 Kan. 497, 27 P. (2d) 242, is directly in point. In this case the plaintiff went to the defendants' home where there was a controversy as to a number of bales of hay. The plaintiff and the two defendants went out to the barn to make a count of the bales, at which place the plaintiff and one of the defendants engaged in a fist fight. The other defendant then mixed up in the melee and all three parties were injured, the plaintiff the most severely. Suit was brought by plaintiff Schwab for damages for assault and battery. Each of the defendants answered denying liability and filed counterclaims seeking to recover damages on similar charges from plaintiff. Upon the trial the jury returned three verdicts, one of which was ''for the plaintiff and against both defendants and assessed plaintiff's recovery at no damages actual or punitive and assess one-third of the court costs to the plaintiff.'' Another verdict was

in favor of John Nordstrom, one of the defendants, against the plaintiff and "the amount of his recovery was fixed at no damages actual or punitive, and one-third of the costs were assessed to him." The third verdict was in favor of Ruben Nordstrom against the plaintiff, and "the amount of his recovery was assessed at no damages actual or punitive, and one-third of the costs were assessed as to him." The parties agreed that the assessment of costs by the jury should be treated as surplusage and the only contention was that when the jury found in favor of the plaintiff and against each of the defendants, it was error not to assess some damages. The court said at pp. 243, 244:

"Appellant argues that, when the jury found in favor of plaintiff and against each of the defendants, it was error not to assess some damages, hence that the court should not have received the verdict, or that a new trial should have been granted. But the same argument can be made with respect to each of the defendants. While the forms of the verdicts are awkward, considering all of them, it is clear that the jury found that none of the parties claiming damages had made out a case in which he was entitled to recover damages. That is the view taken by the trial court. There is evidence in the record from which the verdicts as so interpreted can be harmonized. While plaintiff was the more severely injured, there is evidence, although conflicting, from which the jury might very well have found that plaintiff was the aggressor, and for that reason not entitled to recover any sum as damages. With respect to the verdicts for each of the defendants, without allowing them damages, these may be sustained upon the view that, although plaintiff was the aggressor, the actual damage sustained by each of the defendants was inconsequential. . . . The court had no difficulty in interpreting the verdicts as

above outlined, which appears to be the only reasonable interpretation to give them, and approved the verdicts and declined to grant a new trial. General verdicts should be construed to give them effect, if that can reasonably be done. In 27 R. C. L. 859, it is said: 'If by a reference to the record any uncertainty in the verdict can be explained, it is sufficient to sustain the appropriate judgment; and if the parties could not have been prejudicially affected, the fact that the form is unusual and not according to practice is not such a defect as to justify a reversal.' "

It is also contended by plaintiff that defendants' counsel made statements in his closing argument to the jury that were so improper, prejudicial and inflammatory as to require the granting of a new trial. Defendants insist that an examination of the closing arguments in their entirety will clearly demonstrate that their attorney made no statements or remarks that were inflammatory or prejudicial and that in every instance and in every respect the statements of their counsel about which complaint is made were in reply to the argument of plaintiff's counsel.

For a better understanding of the statements complained of in the closing argument of defendants' counsel, we deem it proper to quote the pertinent portions of plaintiff's attorney's argument, defendants' attorney's argument and plaintiff's attorney's closing argument to the jury as follows:

"PLAINTIFF'S ATTORNEY'S ARGUMENT.

"Now, Mr. Crowe may talk about what Chapin did on this occasion, he was driving 45 miles an hour on that highway. That is a very reasonable speed in the country and this was out in the country on Algonquin Road. Let us test these men by a test you would apply to yourselves. Here is a man that comes over the top of that hill seventy miles an hour—I

don't care how fast you make him go, seventy miles an hour, and he sees this man just clearing the east-bound lane, is he going to run off of the highway and hit him down on the dirt or is he going to go around if it appears that can be done? . . . He could be going 25 or 35, I don't care what degree it was. Now, Mr. Crowe has talked to you in his opening statement concerning speed. Things happen rapidly. It isn't only with reference to automobiles, but we live in a fast way, we live in a hurry and do things in a hurry. We have to do it to keep out from under foot. One word more and I am going to conclude. I wondered when I saw the pleadings in this case and saw that there was a counterclaim made against Mr. Chapin, a claim filed after Mr. Chapin filed his case in court. Herbert Foege filed a claim in answer to it and said, 'I was hurt too; I want damages.' Well, I wondered whether or not that was sincere, a sincere effort to redress a wrong or whether it was an effort to prevent justice on the facts in this case. I believe the latter is the truth. I do not believe that Herbert Foege believed that he had any claim. I think that counterclaim is solely filed upon the theory that a strong offense is better than a poor defense. . . . He claims damages to the extent of $2,000 and I say that is an effort to defeat the claim of Chapin; to submit a fictitious claim against him deserves no consideration at your hands. It is solely a lawyer's defense and I am satisfied that Herbert Foege never from the time this accident happened until today ever felt he was entitled to one single cent of money for any injuries he may have sustained, great or small.''

''DEFENDANTS' ATTORNEY'S CLOSING ARGUMENT.

''I have been conscious for the third day as I have gone along with you through this case that I have been

at some disadvantage and that these two boys that I happen to represent are at some disadvantage.

"I know that the plaintiff, Chapin, was an employee of Swift & Company and I know that he was driving a car which belonged to Swift & Company which was in fine upstanding shape. I know that this boy here had a 1927 or 1928 Willys Knight automobile and sometimes those old cans are not so hot, and I know this boy and his father are humble farmers and probably try to make a living doing the best they can on the farm.

" . . .

"Mr. Vogel: 'Now, if the Court please, I don't believe that this case has been tried to date upon the relative positions of the parties. That argument is highly prejudicial and improper and I object to it.'

"The Court: 'Proceed, Mr. Crowe.'

"There is another thing, apparently we are under a disadvantage on this side of the table. Now he is charging us with something to defraud you men. I am told here that I am a party to it and I don't mind telling you that this makes my blood boil and I don't mind telling you I do not deserve it, and I don't mind telling you that this boy, no matter who he is or what he is, whether he makes $20 a month or otherwise, is just as much entitled to justice at your hands as Swift & Company employees on the other side of the table.

" . . . But I want to say to you, no matter what the circumstances are, arterial highway or no arterial highway, this boy, humble as he is, has just as much right to that highway as anybody working for Swift & Company. Their rights were equal and he had a right to go down to the farm and grease the plow if he wanted to, that is his business, even though it paid him $20 a month, it was still his business.

" . . .

"The other side of this story is that Chapin came down there at 45 miles an hour and you tell me that anybody that admits going 45, they are going 65, and I know because when you pick up the Tribune in the morning and read the list of accidents—

"Mr. Vogel: 'If the Court please, I don't know whether we are trying cases in the newspapers or not.'

"The Court: 'I will sustain the objection.'

"Mr. Crowe: 'Speed, my friends, is the cause of 95% of all accidents and the fact that we are living in a fast age and the fact about motor car companies putting speed, speed and more speed is not going to decrease accidents, while we have cars with high power and they are still going to spread wreckage all over our State and somebody is going to have certain expenses so what causes accidents I lay to speed.'

"Mr. Vogel: 'Now if your Honor please.'

"The Court: 'Objection sustained.'

"I could unlimber and unleash myself of things on my mind and on my chest, and I have a right to repeat and I ask you in behalf of these two men, these friends of mine, for a verdict in their favor."

"Plaintiff's Counsel's Closing Argument.

"It doesn't make any difference to me and it doesn't make any difference to you and it doesn't make any difference I assure you to Mr. Chapin that these defendants are tillers of the soil, planters in the south or large landowners in the north. It makes no difference to me and it makes no difference to you and it makes no difference to anyone that Chapin is a salesman employed at $2,000 a year for Swift & Company. Those are not things which affect you gentlemen I am sure. It makes no difference whether this man is the lowest or the highest man in the United States and it makes no difference whether these men may

be of high or low degree. Mr. Crowe has told you gentlemen that he has been charged with bad faith in filing this complaint, but upon looking at it I found that Attorneys Jenkins & Kirkpatrick failed to file a counterclaim, but that doesn't make any difference, but Crowe is a fellow of open countenance and he is honest and he is a pretty blamed smart fellow and don't let anybody tell you any different. A man like that when he begins talking about what this fellow is, he is employed by Swift & Company wants you to begin to think about something other than about the evidence and don't forget that. You know when you are without fact and you are without law the best thing you can do to a jury is to wave the flag and that is what my friend has been doing for 25 or 30 years. Those things don't make that much difference in this lawsuit. Now, may I assure you gentlemen that merely because I am not jumping on Crowe or these gentlemen who happen for the moment to be defendants in this case that Crowe has any corner on honesty or good faith in this case. Now, let us not kid ourselves about this lawsuit. It is a lawsuit, of course, and I don't believe that anything I say about Crowe or anything Crowe says about me or anything Crowe says about my client who is interested in this case is going to make any difference. When this case is over and you are through, gentlemen, this man is either compensated for those injuries or he is not. He has no second chance. It is his last chance in this case and when you have had your final say and when your verdict is returned it seals it, it ends this lawsuit, and if he doesn't recover then my duty I am afraid has not been discharged.

"Mr. Crowe talks to you about the kind of people he represents, they are good people. This is not a case where we are seeking to put somebody in jail. That

is not the purpose of this thing. I don't care who Herbert Foege may be or might be, in fact I don't care who his father is. He might be the best, great or little, but I submit to you that Chapin is entitled to a substantial verdict in this case at your hands. . . .

"In any event, gentlemen, don't let the argument of Mr. Crowe about these poor farmers affect your judgment in this case and don't worry whether Chapin can collect it. That is not your function. We will take care of that. Your job is to determine the question of liability and the question of damages and return a verdict then on your honest belief and when you have done that nobody can complain of your action."

We fail to perceive in the argument of counsel, heretofore set forth, that either side made any statement that was so inflammatory or prejudicial as to necessitate the reversal of the judgment in this cause. It appears to us that every statement of any importance in the closing argument of defendants' counsel to which plaintiff objects was based on evidence in the record or was made in response to remarks of plaintiff's attorney. The record in this case is unusually free from error and in our opinion there was no misconduct of defendants' counsel in so far as his closing argument is concerned which wrongfully affected the verdict or should cause a reversal of the judgment. Any statements made by the attorneys in their closing arguments which might possibly be construed as being improper were about equally divided.

Where it appears that one party is as guilty in engaging in an improper argument as the other, the verdict of the jury will not be disturbed on that account. (*Humphreys v. East St. Louis & Suburban Ry. Co.,* 253 Ill. App. 450.) "While it is the duty of the court to see to it that no advantage is obtained

by improper remarks of counsel made to or in the presence of the jury, still counsel cannot be put in a straight-jacket when making their arguments, but within reasonable bonds of propriety must be left to their own discretion." (*Goldstein v. Smiley,* 168 Ill. 438.) Since any line of discussion indulged in by defendants' attorney which was not based on evidence in the record was provoked by or replied to in like manner by plaintiff's attorney, there can be no just ground for the complaint concerning the character of the closing argument to the jury of defendants' attorney. We note nothing in such argument of probable prejudice to plaintiff.

Plaintiff also claims that the admission in evidence of a certain plat offered by defendants constituted reversible error. We have examined this plat and the evidence as to what it purports to portray, and satisfied that it was neither calculated to nor of a nature to mislead the jury, we are impelled to hold that the plat was properly received in evidence.

For the reasons stated herein the judgment of the superior court is affirmed.

*Judgment affirmed.*

FRIEND, P. J., and SCANLAN, J., concur.