Gudrun B. Johanneson, et al., Plaintiffs-Appellants,
v. John M. Ring, Defendant-Appellee.

Gen. No. 66–107.

Second District.

April 20, 1967.

Reese, Schlueter & Ecklund, of Rockford, for appellants.

Maynard, Maynard & Brassfield, of Rockford, for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

This is an appeal brought by Gudrun Johanneson and Benjamin Johanneson, her husband, from judgments in their favor, entered on jury verdicts, of the Circuit Court of Winnebago County on the grounds that the damages awarded were wholly inadequate and against the manifest weight of the evidence; and that certain errors of the trial court contributed to the low verdicts.

On the morning of March 5, 1963, at approximately 9:30 a. m. in the City of Rockford, Gudrun Johanneson was driving home alone from a laundromat. At the intersection of Newburg and Alpine Roads she turned left to proceed to the east on Newburg Road. It was raining and sleeting, and the streets were covered with ice and extremely slippery. Shortly after her turn, the defendant, John Ring, also alone, made an identical turn off of Alpine and proceeded to the east on Newburg Road. Ring noticed Mrs. Johanneson's automobile approximate-

ly 150 feet in front of him and testified that her rear wheels were spinning and that her car was not moving. Mrs. Johanneson denied that her automobile had stopped but stated that, because of the slick pavement, her speed was greatly reduced. The grade of Newburg Road is quite flat to the east from Alpine Road but begins a slight incline at the point that Ring observed the other car.

Ring applied his brakes but was unable to stop his automobile and it collided with the rear of the Johanneson car near the center of the rear bumper. Both automobiles were damaged but, after the police were notified and the usual reports completed, both Ring and Mrs. Johanneson proceeded on their respective ways in their vehicles.

Mrs. Johanneson stated that her head "snapped" at the moment of impact and that she experienced "an awful pain" through her head and neck. She drove home, in considerable discomfort, called her husband by telephone and he took her to see a Dr. Harshfield, their family physician, that afternoon. Dr. Harshfield testified that his examination disclosed tenderness and rigidity in Mrs. Johanneson's neck and that an X ray, taken that day, revealed a straightening of the normal curve of the neck and that the neck was slightly twisted. He also detected muscle spasm and prescribed muscle relaxants and narcotic injections to relieve her pain. Dr. Harshfield continued to see Mrs. Johanneson for several months and, in addition to the narcotics, treated her with a cervical collar and ultrasound treatments to relieve her discomfort. On May 7, 1963, Dr. Harshfield determined that his patient's progress was unsatisfactory and he referred her to Dr. Donald Lyddon, an orthopedic surgeon, in regard to a possible ruptured disc.

It was Dr. Lyddon's opinion, after he had obtained a history from Mrs. Johanneson, that she had a damaged cervical disc and he recommended an anterior neck fusion to correct her condition. To locate the particular disc that is damaged, if any, an incision is made through the neck and a dye is injected into the disc spaces since an undamaged disc will resist the injection of the dye. This procedure revealed that Mrs. Johanneson did have a damaged disc and the fusion was performed by drilling a hole into the damaged disc space, removing as much of the drilled material as possible, and inserting a piece of bone removed for that purpose from her hip. A fusion of this type inevitably creates some disability in the neck by stiffening the replaced joint. This operation was performed on June 10, 1963, and Mrs. Johanneson remained in the hospital for five days. Dr. Lyddon continued to see her regularly and considered the operation a success. In October, 1963, she complained of a recurrence of pain on the left side of her neck but in his opinion that was caused by muscle spasm and he prescribed relaxants and physiotherapy. On April 16, 1964, he last saw his patient professionally and he recommended no further treatments since "she was feeling very good."

Mrs. Johanneson denied that she felt "very good" and in January of 1965, consulted Dr. William B. Fischer, a teacher of orthopedic surgery at Northwestern University. Dr. Fischer took the history, examined her, and was of the opinion that she suffered from an impingement of the 7th and 8th cervical nerves. An electromyographic examination was made that indicated a diminished nerve supply to her left hand and intramuscular weakness. It was Dr. Fischer's opinion that these conditions were caused by the impingement of the cervical nerves which were themselves caused by the accident of March, 1963, or the anterior fusion. He recommended conservative therapy since a further operation in the

344

spinal cord area was extremely dangerous and could result in quadraplegia.

Count I of the amended complaint charged Ring with negligence and asked for damages in the amount of $75,-000 for the injuries suffered by Gudrun Johanneson. Count II sought $25,000 for Benjamin Johanneson for expenses incurred by him for his wife's injuries, and loss of her services.

At the conclusion of the trial, the jury returned verdicts of $2,500 and $2,200 for Gudrun and Benjamin respectively and judgments on the verdicts were entered accordingly. Motions for a new trial were denied and this appeal resulted.

■ The plaintiffs first complain that the facts disclose that the defendant was negligent and that Gudrun Johanneson was free from contributory negligence as a matter of law and that therefore the court committed reversible error in its denial of their motion for a directed verdict on the issue of liability. They contend that although the jury ultimately determined that Ring was, in fact, liable, that the error contributed to the low awards. The recent case of McManus v. Feist, 76 Ill App2d 99, 221 NE2d 418, also was concerned with a so-called "rear end" collision. The court upheld the trial court's denial of a motion for a directed verdict on the issue of liability and stated at page 103:

> ". . . In order that a verdict upon liability may be directed the facts must be susceptible to but one interpretation and it is improper to direct a verdict where there is a conflict in the evidence . . . ."

■ After a motion by the plaintiff for a directed verdict, the court should consider all of the evidence in its aspect most favorable to the defendant, and all reasonable inferences that can be drawn from that evidence, and if there is any evidence or inference which tends to prove the position of the defendant, the motion

345

must be denied. Johnson v. Skau, 33 Ill App2d 280, 284, 179 NE2d 140; Palmer v. Poynter, 24 Ill App2d 68, 71, 163 NE2d 851.

██ When this principle is applied to the case before us we must conclude that the plaintiffs' motion was properly denied. There was testimony that the Johanneson car was completely stopped in the road and it could be concluded that therefore the driver was not free from contributory negligence or, more likely, the evidence could support the conclusion that the accident resulted from the treacherous road conditions and was unavoidable. The determination of the jury that Ring was negligent appears sound but in any event the decision was correctly left for its deliberation.

██ The plaintiffs contend that the awards of the jury were wholly inadequate and against the manifest weight of the evidence. Benjamin Johanneson sought recovery both for his expenditures on behalf of his wife for medical, hospital and professional aid and for the loss of her services to him. Evidence was submitted that Mr. Johanneson paid bills that amounted to $2,121.-21 for medical help for his wife. However, no evidence was offered as to his damages for loss of her services so the award of $2,200 by the jury was clearly supported by the evidence and we will not consider his contention further.

██ ██ As a general rule, a court of review will not interfere with the discretion of a jury in its assessment of damages. Corsello v. Warren, 51 Ill App2d 367, 371, 201 NE2d 155. Ordinarily, if the jury has been properly instructed, and its decision was not influenced by passion or prejudice, the award will not be disturbed unless it is palpably inadequate. Haleem v. Onate, 71 Ill App2d 457, 460, 219 NE2d 94. The plaintiff has cited several Illinois cases where jury awards have been held inadequate by courts of review and the cases remanded for new trial for that reason.

346

We have examined those cases with great care and will review them very briefly for the purpose of comparison with the situation before us. In O'Brien v. Howe, 30 Ill App2d 419, 174 NE2d 905 (1961), an award of $1,200 was held inadequate where the plaintiff had proven "special" (out-of-pocket expenses) damages of $1,-551.45 on the ground that the jury had obviously failed to consider all the elements that comprise compensable damages.

The court held an award of $2,000 inadequate in the case of Montgomery v. Simon, 309 Ill App 516, 33 NE2d 642 (1941) where the plaintiff had established special damages in the amount of $1,700 and it appeared that he would be unable to do any manual labor in the future as a result of his permanent injuries. The court concluded that the jury had failed to take into consideration proper elements of damages which had been adequately proven; and that the jury apparently improperly determined that the plaintiff had already been compensated through his own insurance in arriving at their award.

In Luner v. Gelles, 314 Ill App 659, 42 NE2d 313 (1942) an award of $375 was held to be inadequate where the plaintiff's injuries were permanent, his special damages were in the sum of $372.90, and it appeared that the jury had compromised the damages because of doubtful liability.

An award of $5,000 was inadequate in Lukich v. Angeli, 31 Ill App2d 20, 175 NE2d 796 (1961) where the plaintiff had permanent injuries, medical expenses of $1,861.61 and loss of wages of approximately $5,000 and it appeared that the jury had been prejudiced by the improper final argument of the defense counsel.

This court recently held an award of $2,250 inadequate where the plaintiff had medical expenses of $1,-070.90, loss of profits of $2,000 to $3,000, and it appeared that the jury was confused and had compromised

347

on the question of liability. Harris v. Minardi, 74 Ill App2d 262, 220 NE2d 39 (1966).

In Wihr v. Bruno's Appliances Sales & Service, 29 Ill App2d 145, 172 NE2d 633 (1961), two awards were set aside where it appeared that the jury had failed to consider the proper elements of damage clearly proven and the plaintiffs had a veritable catalogue of objective, painful and permanent injuries.

In our case, the plaintiff, Gudrun Johanneson, seeks no recovery for her out-of-pocket expenses since her husband had sued and recovered for those items. She was unemployed at the time of the accident and she has made no claim for loss of earnings or profits. She testified that she has had pain in her neck, shoulders and that her fingers on her left hand are numb. She has some pain "almost every day" and recurring headaches. Her complaints are, by their nature, mostly subjective.

Dr. Fischer found a diminuation of nerve supply and intramuscular weakness when he examined Mrs. Johanneson in January of 1965, and was of the opinion that they were caused either by the accident or the surgery that resulted. However, Dr. Lyddon, the surgeon, had discharged her in April of 1964 and felt that the fusion was a success and that the patient was "feeling good."

██ ██ Under the circumstances we cannot conclude that the jury's award of $2,500 was either palpably inadequate or against the manifest weight of the evidence. The fact that other juries in other cases have returned higher awards for comparable complaints is not, of itself, material. Although the award was not particularly large, we do not feel that it was inadequate or that the jury misused its function.

██ Plaintiff next urges that the court committed reversible error in refusing plaintiffs' IPI 21.02 (Burden of Proof Instruction) and plaintiffs' IPI 20.01 (Issue Instruction) from which there had been deleted the requirement that the plaintiff wife was "exercising ordinary

348

care." We have concluded this issue in the comments made in upholding the trial court's refusal to give the plaintiff a directed verdict on the question of liability at the close of the evidence. The failure to include the requirement that the plaintiff wife was exercising ordinary care was ample reason to refuse these instructions. The Damage Instruction, IPI 30.01, etc., included 30.06, the element of medical expenses. The recovery of medical expenses was sought for and incurred by the plaintiff husband and should not have been included in the damage instruction for the plaintiff wife. The court properly refused this instruction.

 The plaintiff husband tendered IPI instructions 32.01, 32.02, 32.03 and 32.04 (Injury to Spouse) including the section on loss of services, IPI 32.03. He testified that he was making no claim for taking care of the children since his mother-in-law provided for this, from which we conclude that he made no claim for loss of services of his wife, and therefore, the instruction should not have been given. Shore v. Turman, 63 Ill App 2d 315, 321, 210 NE2d 232.

 Objections to defendant's instruction conforming to IPI 60.01 (Violation of Statute) requiring that a person who stops or suddenly decreases speed should give an appropriate signal is a defense urged here and is an element to be properly submitted to the jury for a determination of whether or not the plaintiff was in the exercise of ordinary care. A party has the right to have the jury instructed on his theory of defense. Shore v. Turman, supra, at page 321.

 Plaintiff complains of an instruction given by the defendant stating that if there is no liability the jury would have no occasion to consider damages. This is an IPI instruction appearing in the Additions and Revisions, 1965, 21.07 (Burden of Proof). We approved a similar instruction in Hoffman v. Wilson, 60 Ill App2d 396, 404, 405, 208 NE2d 607.

Finally, the plaintiff urges improper conduct on the part of defense counsel prevented plaintiff from receiving a fair trial on the question of damages. This question is left very largely to the discretion of the trial court who has the opportunity of hearing remarks of counsel for both sides. Discretion of the trial court may be abused, thereby depriving a litigant of a fair trial. Owen v. Willett Truck Leasing Corp., 61 Ill App 2d 395, 402, 209 NE2d 868. We find no prejudicial reversible error here and a specific discussion of the points would unnecessarily extend this opinion. Jines v. Greyhound Corp., 46 Ill App2d 364, 378, 197 NE2d 58.

We have not considered the contentions of the defendant that the appeal should have been dismissed for certain alleged technical failures since those contentions should be raised by motion, not in the brief. Ill Rev Stats, c 110, § 201.5(2), (3) (1965) (Supreme Court Rule 361).

For the reasons given, the judgment orders of the Circuit Court of Winnebago County will be affirmed.

Judgment affirmed.

DAVIS, P. J. and MORAN, J., concur.