**Phyllis Manders and Frank Manders, Plaintiffs-Appellants, v. Peter Pulice, Defendant-Appellee.**

**Gen. No. 68–15.**

Second Judicial District.
November 27, 1968.
Rehearing denied January 9, 1969.

ABRAHAMSON, P. J., dissenting.

Miller, Gorham, Wescott and Adams, of Chicago (Marvin F. Metge, of counsel), for appellants.

Corrigan, Mackay, Quetsch and O'Reilly, of Wheaton (John R. Mackay, of counsel), for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Plaintiffs appeal from judgments entered on jury verdicts in a suit claiming injury to Phyllis Manders and damages to Frank Manders for loss of his wife's consortium arising out of the same collision. Judgment in the amount of $6,000 was entered on the guilty verdict against the defendant Peter Pulice for the wife; judgment of "0" damages was entered on the guilty verdict against the defendant, for the husband. Plaintiffs' motion for a new trial on damages alone, or in the alternative, for a new trial, was denied.

Plaintiffs, in support of their appeal for the same alternative relief here, urge the inadequacy of the damages awarded, the inconsistency of the verdicts, and errors in rulings on instructions.

Defendant counters that the evidence does not support more favorable verdicts; that the trial court correctly ruled, in effect, that the "0" was a "not guilty" verdict and proper under the facts; and that the alleged errors in rulings on instructions have not been preserved for review.

The accident took place on August 25, 1965, when the car in which Mrs. Manders was riding was struck head-on by a car driven by defendant. The car in which plaintiff was traveling was moving slowly while passing the scene of an earlier accident. Defendant's car was estimated by an eyewitness to be traveling at between 30

470

and 40 miles per hour when it crossed the center line and struck the car in which plaintiff was riding.

In the collision, Phyllis Manders was thrown from the rear seat up against the front windshield, and removed from the scene to a hospital where she remained for six days.

The deposition of her attending physician, Dr. Glen Asselmeier, evidenced that Mrs. Manders had received a compound comminuted fracture of the tibia, and a fracture of the fibula of her right leg; cerebral concussion; severe laceration of the lateral aspect of her nose; a dislocation of her right ankle; and multiple abrasions and bruises. During her stay in the hospital she made no complaint of headaches or radiating pain in her legs. When she was discharged from the hospital, her condition was good. She had a long leg cast on and walked on non-weight bearing crutches. When he next saw her on September 7, 1965, she was still in the long leg cast and had some pain in her leg, but not enough to require medication. She complained of back problems which he associated with her altered gait, and diagnosed as low back strain. When he next saw her on September 21, 1965, his findings were the same except he was not satisfied with the cosmetic aspect of her nose which had been sutured. After a number of further examinations and a resection of the scar on her nose resulting in a "plastic fine line scar," he discharged her after March of 1966. At that time her leg had healed well and was weight bearing. Throughout, she had complained of "vague" dizziness and "vague" back problems, and of pain in her leg. On discharge he advised her to return if she had further complaints, but she did not do so. In his opinion all of her injuries were from the accident.

Dr. Orren D. Baab, an orthopedic surgeon, testified that he examined Phyllis Manders on June 13, 1967. She walked well with a "temporary" limp when she got up from the chair. The scar on her nose was visible but

"not cosmetically undesirable." There were small visible scars under the right and left eyebrow, a bony prominence over the right eyebrow, and a thick scar behind her shoulder. He found that the right calf measured $13\frac{1}{4}$ inches, the left calf 14 inches. The right ankle was a little smaller than the left. The right leg was $\frac{3}{16}$ths of an inch shorter than the left leg, but this would not produce a limp nor any subsequent disability in the knee or hip. There was "an early arthritis" of the ankle joint, with a limitation of motion in the foot. It was his opinion that if she restricted herself to decreased activity she would experience only some ache, stiffness and discomfort, which she could handle herself with aspirin; but that if she assumed a normal life she would in the future require more definitive care and stronger medication. While both the limitation of motion in the ankle, and the shortening of the right leg were permanent conditions, the difference between circumferences of the calves would improve with exercise.

The medical and hospital expenses were $1,282.37. Mrs. Manders' lost wages for the twenty-nine or thirty weeks she was absent amounted to about $3,300.

The evidence on the claim for loss of consortium as testified to by Frank Manders consisted of the following: Prior to August 25, 1965, Mrs. Manders was in good health and she and her husband did a great deal of dancing, bowling, ice skating and roller skating. She did the housework, cooking, laundry and other chores in taking care of the family. Her mother-in-law stayed with her for the first two weeks following the hospitalization and was paid $75. Thereafter her husband did most of the chores around the house, with assistance from their two daughters, as she was in a wheel chair for most of the time during the months following the accident. Mrs. Manders resumed her full household duties about two months before the trial, in June, 1967.

Following the hospitalization, Phyllis Manders was short-tempered, very irritable and could not remember anything that was told to her. Her gait was still very labored and awkward. She could not "communicate" with her husband after the accident. There was a change in her sleeping habits. At least one night a week Mr. Manders would wake up in the middle of the night and find Mrs. Manders sitting in the front room. Mrs. Manders still limps on occasions. He testified he lost $500 in wages for unreimbursed time he took off from work to take his wife to the Doctors. (Dr. Asselmeier's testimony, however, accounted for ten to eleven visits of which he had made records, while both plaintiffs testified to between twenty and twenty-five visits.)

■ ■ We first approach the question of the adequacy of the judgment secured by Phyllis Manders. Considered separately from the "0" judgment in the husband's claim, we would not overturn it. We cannot say, from this record, that it is so grossly or palpably inadequate as to be against the manifest weight of the evidence. While her testimony of her suffering and complaints at the trial and the number of her visits to the doctor were of greater magnitude than the Doctors accounted for in their testimony, this raised a question of credibility, peculiarly within the discretion of the jury, in a trial, as here, free from prejudicial trial error on this issue. Borries v. Z. Frank, Inc., 73 Ill App2d 128, 136, 219 NE2d 737 (1966); Johanneson v. Ring, 82 Ill App2d 340, 346–348, 226 NE2d 291 (1967); Haleem v. Onate, 71 Ill App2d 457, 460–461, 219 NE2d 94 (1966).

■ If we then consider the "0" verdict and judgment on Frank Manders' claim for loss of consortium, apart from the judgment for his wife's injuries, we must conclude from the record that, irrespective of whether it is construed as a "not guilty" finding or as "0" damages, it is against the manifest weight of the evi-

dence. Cases cited by defendant for the rule that where no damages have been proved, there is no requirement that the jury return damages even after a guilty verdict, are not in point. (E. g., Johanneson v. Ring, supra, 346; Haleem v. Onate, supra, 462–464.)

For here the testimony of both Dr. Asselmeier and Frank Manders, unrefuted, established that Phyllis Manders was physically incapable of performing normal household chores for a period of at least five months. As a result of her injuries she was changed from an active normal wife to one with a short temper, changed sleeping habits, and uncommunicative with her husband. In addition, there was proof of loss of work by the husband in attending to his wife and family representing an out-of-pocket loss of approximately $500.

 Illinois recognizes a separate cause of action in the husband's name where, by reason of injuries to his wife, the husband has been deprived of her services as his wife, and has suffered and sustained a loss of her consortium, or has been put to expense which was not recovered in the suit by the wife. Barbour v. Great Atlantic & Pacific Tea Co., 143 F Supp 506, 507 (1956); Price v. H. B. Green Transp. Line, 287 F2d 363 (1961). Consortium in Illinois is comprised of not only material services, but also the elements of companionship, felicity and sexual intercourse, all welded into a conceptualistic unity. Dini v. Naiditch, 20 Ill2d 406, 427, 170 NE2d 881 (1960). Consortium has also been described as including a person's affections, society, and aid. Betser v. Betser, 186 Ill 537, 539–540, 58 NE 249 (1900). A declaration which charges in apt words that the wife of the plaintiff was injured through the negligence of the defendant, and that by reason of such injuries he has been deprived of her services and society and put to expense, shows a good cause of action. Chicago & Milwaukee Elec. R. Co. v. Krempel, 116 Ill App 253, 255–256 (1904).

If, as defendant suggests, although the trial judge did not so expressly state, he construed the "0" verdict as a "not guilty" verdict, we reach the same result. Chapin v. Foege, 296 Ill App 96, 100–104, 15 NE2d 943 (1938), cited by defendant, does not sustain his position, in that in Chapin the court expressly and consistently construed the verdict to avoid the inartificiality of the verdict forms in order to give effect to the intention of the jury. The jury had, the court felt, decided that plaintiff was contributorily negligent and that therefore neither plaintiff nor defendant was entitled to damages. Here, however, the trial court made no express ruling and could not do so because, since Frank Manders was not involved in the accident, it would be inconsistent to find defendant guilty in one action and "not guilty" in the other.

Defendant's further argument that the case of Kimmel v. Hefner, 36 Ill App2d 137, 183 NE2d 13 (1962), cited by both parties, sustains the trial court is finally considered. The jury there returned a verdict for $13,000 for the wife, but, as to the husband's claim for consortium, first returned no verdict, and then being instructed by the court to return and render a verdict, found in his favor but assessed "no" damages. The wife did not appeal. The husband was the driver, with his wife as a passenger. The court sustained the verdict, stating on pages 142–143:

> "The Illinois cases on the judge's authority to interpret, and the holding that common sense should prevail over legalistic forms, furnished some basis to support the judgment. The jury may have intended a not guilty verdict on the theory that this plaintiff was not free from contributory negligence. We hesitate to dispose of the case on this ground alone, since there appears to us the possibility the jury intended to disregard the instructions of the court, and deliberately return inconsistent verdicts. If this

475

latter were the fact, then it is our opinion both verdicts should have been disregarded and a new trial ordered as to both claims. Gray v. Brooklyn Heights R. Co., 175 NY 448, 67 NE 899; Keith v. Appelberg, 77 NYS2d 349.

"The jury may have considered the award to the wife as adequate to the family, and denied a separate recovery to the husband for that reason, hence, the failure on the first time to return any verdict on his claim. But if that were the fact, then it would be manifestly unfair to reverse and order a new trial as to the husband's claim alone, without the possibility of adjusting the other verdict to fit.

". . .

"Considering the two verdicts together we cannot say that damages clearly proven have been overlooked, they may have been considered and the single verdict regarded as covering both claims. Since this court cannot disturb the verdict as to the wife, the judgment on the separate claim of the husband is affirmed."

Here, both claimants have appealed and the entire record is before the court. Unless we are to speculate that the verdict as to the wife was intended to be adequate as to the family, it appears that damages on the husband's consortium claim have been overlooked and it appears highly possible that the jury intended to disregard the instructions and deliberately returned inconsistent verdicts. Since both verdicts are before us on this appeal, no unfairness will result because on a retrial the jury can properly evaluate both the claim of the wife for her injuries and the claim of the husband for his loss of consortium.

In this view, we do not reach the question of the rulings on instructions.

We, therefore, reverse and remand for a new trial consistent with this opinion.

Reversed and remanded for a new trial.

MORAN, J., concurs.

ABRAHAMSON, P. J., dissenting:
The majority of the Court has determined that the award to Phyllis Manders is adequate. It appears to me to award her a new trial solely on the grounds that an "0" verdict was returned for her husband for loss of consortium is inconsistent.

It is my conclusion that the pronouncements in Kimmel v. Hefner, 36 Ill App2d 137, 183 NE2d 13 (1962) would sustain the trial court.