**Larry E. MOPPIN and Patti Moppin, Plaintiffs-Appellants,**

v.

**Michael L. MOPPIN, Defendant-Appellant.**

**No. WD32906.**

Missouri Court of Appeals, Western District.

Oct. 5, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Nov. 30, 1982.

Application to Transfer Denied Jan. 17, 1983.

James D. Boggs, Platte City, for plaintiffs-appellants.

George T. O'Laughlin, Kansas City, for defendant-appellant.

Before KENNEDY, P.J., and WASSERSTROM and MANFORD, JJ.

WASSERSTROM, Judge.

Plaintiff Larry Moppin sued for personal injuries alleged to have been caused by defendant's negligence, and plaintiff Patti Moppin sued for loss of consortium. The jury brought in a defendant's verdict against Larry but awarded $5,000 damages to Patti. Larry appeals from the judgment entered on the verdicts to the extent that the judgment is adverse to him. Defendant appeals from the judgment to the extent that it is in favor of Patti.

Larry is defendant's uncle and the parties live in adjoining houses. Defendant was erecting a new house, in the course of which the exterior walls were assembled horizontally and then lifted into place. Defendant was employed by a contractor who engaged in this type of construction, and Larry also had some lesser degree of experience in this type of work.

At the time of the accident in question, two walls of defendant's house had already been lifted into a vertical position, and the third wall was ready for similar treatment. Defendant and his father at that point went next door to ask Larry to join them and defendant's brother in lifting the third wall into place. Larry agreed to do so, and the four men spaced themselves about six feet apart and lifted the top of the wall off the ground. They then walked forward under the wall until the wall was about two-thirds or three-fourths of the way to a vertical position. The wall then either caught on an obstruction or the weight of the wall proved too heavy for the men to proceed with their lifting.

A brief discussion then ensued between the men, and they agreed among themselves to walk the wall back down. However as they did so, the wall proved too heavy and started to fall. By common consensus, all four let go and tried to run out from under the wall. Larry got caught

under the wall before he could escape and was severly injured. A safer way by which to raise the wall would have been to use jacks. Defendant had borrowed jacks from his employer, and they were available for use on this occasion. However, the jacks went unused and manual lifting was attempted instead, in the manner described above.

Larry's points on appeal as contained in his brief are that: (1) he is entitled to a new trial because of the inconsistency of the jury verdicts against him and in favor of Patti; and (2) the contributory negligence instruction given at the request of defendant was erroneous. Defendant's countercontentions are that: (1) there was no error in the contributory negligence instruction; (2) the inconsistency in the verdicts should be resolved against Patti; and (3) the verdict director for Patti was defective in that it made no reference to the defense of contributory negligence.

### I.

The first major issue to be decided, in order to permit most ready comprehension, is the propriety of defendant's instruction on contributory negligence. Larry contends that the instruction was erroneous because it required a verdict for defendant if the jury found that Larry by ordinary care should have known that the method of raising the wall used by defendant did not provide Larry with a safe place to work. Larry argues that he and defendant were in a master-servant relationship and that Larry as the servant cannot be contributorily negligent unless the danger was imminent, obvious or glaring, citing *Rouchene v. Gamble Const. Co.*, 338 Mo. 123, 89 S.W.2d 58 (1935) and *Hightower v. Edwards*, 445 S.W.2d 273 (Mo.banc 1969). Larry insists that the instruction was faulty for not defining contributory negligence in those terms.

The principle relied upon by Larry is applicable only if the manner of work was directed by the master. Larry admits the necessity for him to prove that fact, and with respect to that requirement he states

in his brief: "It is the Appellant's [Larry's] position that it is fair to infer from the evidence that the Appellant [Larry] assisted the Respondent [defendant] in raising the wall in the manner directed by the Respondent [defendant]."

■ A sufficient answer to Larry's argument lies in the fact that it finds no support in the evidence. The testimony of all witnesses uniformly shows that defendant did not direct the manner in which the work was to be done, but rather that the manner of work was decided by mutual agreement. Larry himself so testified, as follows:

"Q. This project, that is, the lifting of the wall, from beginning to end, was something that you jointly and mutually agreed to do, and agreed on how to do it; isn't that a fair statement?

A. Yes; it is.

. . . .

Q. (By Mr. O'Laughlin) One other thing. I think in answer to one or more of Mr. Boggs' questions, you may have said something about Mike giving directions, but actually Mike wasn't giving any orders, or supervising anything in the sense that he was taking supervisory authority over you, was he?

A. I don't think he was; no. He wasn't giving no direct orders; no, sir.

Q. And he wasn't even giving you any directions, was he?

A. Not to my knowledge; no sir.

Q. Alright [sic]. Well, did he direct you in the manner in which the wall was to be raised?

A. No; he did not."

Defendant likewise so testified:

"Q. Now, during the time, did any of your family, your kin—when they were over there, did you supervise them, or give them directions, or anything like that in any way?

A. No, sir. No direct orders; no.

. . . .

Q. And when they were there, had come, and were there, did you do any bossing of them, telling them what to do, and how to do it?

A. No, sir.

. . . .

Q. Okay. So, up to the day, and the time, right before the accident happened, had you ever given Larry any orders or instructions, or anything like that?

A. Not really; no."

Typical of how the whole job was handled was defendant's description of what happened when the wall proved to be too heavy to be lifted to vertical:

"[W]e got it about two-thirds of the way up, and I don't know whether it was too heavy, or what happened,—I just don't know—it just got there, and we couldn't do anything with it, so it was a mutual agreement that we started walking it back down. So, we walked it down maybe three or four steps, and it just got to coming down too fast for us, and everything happened.

Q. Were there any voices back and forth about the time that it seemed to be getting too heavy for you?

A. Yes; there was.

Q. What did it consist of?

A. I think I said 'What should we do with it', or something like that. I don't remember exactly. And we all decided to just start walking it back down."

Tom Moppin, defendant's brother, also testified to like effect:

"Q. And the raising of the walls, Tom, did you rely on Mike for directions as to how to do that safely?

A. Not really.

. . . .

Q. Tom, I think you, when counsel was asking you some questions about you relied, and Mike directed, and such as that, said there really wasn't any exercise of any supervision, or bossing, or such as that, in the whole project; was there?

A. No.

Q. Mike never took charge in the sense of saying you do this, or you don't do that, to anybody?

A. No.

Q. On the day when this lift started out, Mike didn't do anything along the line of saying you stand here, or you stand there, or that sort of thing?

A. No; we just lined up.

Q. So, it was just a joint, or mutual, effort to try to get the wall up?

A. Yes.

Q. And a joint, or mutual, effort, you say, to try to get the wall down?

A. Yes."

Lawrence Moppin, defendant's father, likewise testified to the same effect:

"Q. Do you know how many men, Mr. Moppin, it takes to raise a wall safely?

A. Depends on how big the wall is, I'd say.

Q. Did you look towards Mike to determine that?

A. Not really, no."

■ There was no error in the contributory negligence instruction.

## II.

The next issue for consideration is the vexing matter of the apparent inconsistency of the verdict in favor of Patti but against Larry. Patti's claim for loss of consortium is purely derivative from Larry, and if Larry is barred from recovery by reason of his contributory negligence, then Patti is likewise barred from recovery on her claim. *Pruneau v. Smiljanich,* 585 S.W.2d 252 (Mo.App.1979); *Elmore v. Illinois Terminal Railroad Company,* 301 S.W.2d 44 (Mo.App.1957). This rule was recognized by the giving of Instruction No. 10 which told the jury that their verdict must be for defendant "on the claims of both plaintiffs" if they found facts which would establish contributory negligence on the part of Larry.

Under the rule just mentioned, a verdict in favor of Patti would appear to be flatly inconsistent with a verdict against Larry. If an inconsistency does in fact exist, the question would then arise as to what the remedy should be. Larry in his brief argues simply that the inconsistency calls for

the grant of a new trial to him on his claim. In oral argument, however, he has conceded that if a new trial is to be granted at all, then it should be an order for a new trial on both the claim of Patti as well as the claim of Larry. Although Larry admits that he has no Missouri authority precisely in point, he cites a number of Missouri decisions which granted a new trial on a derivative claim where the jury had granted damages to an injured spouse but denied any recovery to the spouse seeking loss of consortium. *Barlow v. Thornhill,* 537 S.W.2d 412 (Mo.banc 1976); *Foster v. Rosetta,* 443 S.W.2d 183 (Mo.1969); *Manley v. Horton,* 414 S.W.2d 254 (Mo.1967); *Kaelin v. Nuelle,* 537 S.W.2d 226 (Mo.App.1976); *Pietrowski v. Mykins,* 498 S.W.2d 572 (Mo.App.1973); *Stroud v. Govreau,* 495 S.W.2d 682 (Mo.App. 1973). He also cites *Mobil Oil Corp. v. Days,* 618 S.W.2d 286 (Mo.App.1981), in which a new trial was granted because of inconsistent verdicts where the jury found in favor of a principal obligor but against the guarantor of the same obligation. He also cites cases from other jurisdictions collected in an annotation, 66 A.L.R.3d 472 (1975), tending to show a majority rule that a new trial will be granted as to the claims of both spouses where the jury finds against the injured spouse but in favor of the spouse seeking loss of consortium.

Defendant on the other hand takes the position that the judgment against Larry should be allowed to remain intact, and the judgment in favor of Patti should be set aside. He cites no Missouri decision precisely in point, but makes an analysis of all the Missouri decisions in analogous situations from which he deduces the conclusion that the determination by the jury against Larry should be treated as determinative on both his principal claim for damages and also Patti's derivative claim for loss of consortium. Although not cited by him, there are cases supporting his position in the situation of a master and servant being sued by a third party because of negligence of the servant. In that situation, the general rule stated by the Missouri cases is that if the jury brings in a verdict against the master but in favor of the servant, then the inconsistent result will be remedied by setting aside the verdict against the master. *McGinnis v. Chicago, R.I. & P. Ry. Co.,* 200 Mo. 347, 98 S.W. 590 (1906); *Ward v. Lemke,* 602 S.W.2d 33 (Mo.App.1980) and cases therein cited. In the course of oral argument before this court, counsel for Larry conceded that these master servant cases are analogous to the present case.

The rule for which Larry contends holds much appeal and is directly supported by out-state decisions. However, those decisions are premised on the proposition that where one verdict is against the injured spouse but the other verdict is for the other spouse on the derivative claim, the result is inexplicable on any rational basis and therefore both verdicts should be set aside. This reasoning is well represented by *Gray v. Brooklyn Heights R. Co.,* 175 N.Y. 448, 67 N.E. 899, 900 (1903), which holds:

"When, however, the two actions are thus tried together and inconsistent verdicts are rendered, we incline to the view that sound practice requires both verdicts to be set aside at once, without attempting, by analysis of the evidence or otherwise, to discover whether either should be allowed to stand. No other course is safe, for it cannot be told with reasonable certainty what facts the jury found. The presumption is that they willfully disregarded the instructions of the court, and reached a conclusion by some method not warranted by law...."

The reasoning of *Gray* and like cases does not apply here, because of the following special factor. The instructions in this case were packaged in accordance with the directions under M.A.I. 2.00. In accordance with the authorized directions, the jury was instructed that Instructions 7 through 11 and general Instructions 1 through 6 applied to the claim of Larry, while Instructions 12 through 14 and general Instructions 1 through 6 applied to the claim of Patti. The only instruction on contributory negligence was covered by Instruction 10, which was within the group which the jury had been told was applicable only to Larry. Furthermore, Instruction No. 13, part of

the group applicable to Patti, instructed the jury that it must find in favor of Patti if they found certain facts, and that instruction made no reference or reservation whatsoever with respect to the matter of contributory negligence.

In view of the instructions just mentioned, there is in reality no inconsistency in the verdicts. The verdicts were responsive to the instructions as reasonably understood by the jury. Under the instructions, the two verdicts were perfectly consistent and logical. The problem lies instead in the fact that the instructions were wrong in failing to instruct the jury that Larry's contributory negligence should bar Patti from recovery.

The jury should be accorded the benefit of an assumption that it was composed of reasonable men and women, and the jury verdict should be interpreted consistently, one with the other, if that can be done by any logical process. Such a consistent interpretation is not only possible here, but such an interpretation is almost irresistable. The jury finding against Larry can be accounted for, and can only be explained, on the basis that the jury found him to be guilty of contributory negligence which barred him from recovery under Instruction No. 10. However the jury could reasonably believe (and were virtually compelled to believe) under Instructions 12 and 13, that contributory negligence was unimportant so far as Patti's claim was concerned and that they should find for her regardless of any contributory negligence on the part of Larry.

In our view, under the circumstances of this case, the verdicts are clear and show a finding by the jury that Larry was guilty of contributory negligence. Under that finding, neither spouse is entitled to recover. The verdict in favor of Patti was therefore improper and should be set aside.

The judgment against Larry is affirmed. The verdict in favor of Patti is inconsistent with the jury's primary determination of nonliability by the defendant, and the judgment in her favor is reversed.

All concur.